### P. A. McKenzie et al. v. C. E. Barrett.

Decided June 14, 1906.

**1.—Construction of Verdict—Judgment.**

In a suit by the owner of a building against a contractor and the surety on his bond for failure to complete said building, the jury returned the following verdict: "We, the jury in this case, find for the plaintiff to the amount asked, namely $902.92, against the defendant bond company, and judgment against the defendant McKenzie in favor of the bond company for like amount, together with $200 attorney's fees." Held, sufficient to support a judgment in favor of plaintiff against both defendants.

**2.—Items of Expense—Certificate of Architect.**

A building contract stipulated that the amounts expended by the owner, in case of default by the contractor, should be audited and certified by the architect; an itemized account of such expenditures was subscribed by the architect, and the architect testified that he approved and certified each of said items. Held, a sufficient compliance with the requirement of the contract.

**3.—Alteration in Written Instrument—Burden of Proof.**

The general rule that if, on the production of an instrument in writing, it appears to have been altered, it is incumbent on the party offering it to explain this appearance, is modified by the further rule that if there ·is no peculiar circumstance of suspicion attached to the altered instrument the alteration is presumed to have been made prior to or contemporaneous with its execution, and in such case the burden of proof is on the party attacking the instrument to show that the alteration was made after its execution.

**4.—Same—Charge.**

There were several alterations in a contract introduced in evidence by the plaintiff; the court charged the jury to find for defendants if they believed all the alterations were made by the plaintiff after the contract was executed. Held, the failure to charge that if any one of said alterations was so made to find for the defendant was an error of omission, and a special charge supplying the same should have been requested.

**5.—Building Contract—Payments—Certificate of Architect.**

Where a building contract required the owner of the building to reserve in his hands twenty percent of the estimates of the architect made periodically of the material and labor furnished by the contractor, and also required the owner to pay to the contractor eighty percent of such estimates upon the certificate of the architect, the surety on the contractor's bond is not released by payments in excess of eighty percent of the value of the material and labor furnished by the contractor when such payments are made upon the certificates of the architect

and without knowledge on the part of the owner that they are in excess of the limit fixed by the contract.

### ON REHEARING.

**6.—Alterations in Contract—Charge—Affirmative Error.**

Where there were several alterations in a building contract introduced in evidence by the plaintiff, the failure of the court to charge the jury that if any one of said alterations was made by the plaintiff after said contract was executed, such alteration would avoid the entire contract, would be affirmative error, provided the alteration was material.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*W. H. Ward* and *E. P. Phelps,* for appellant, McKenzie.—The jury having found by its verdict for plaintiff against the defendant surety company only, it follows that its verdict was in favor of this defendant as between him and the plaintiff. Gulf, C. & S. F. Ry. Co. v. James, 73 Texas, 18.

The contract between plaintiff and McKenzie having fixed the method of determining the amount of expense reasonably incurred by plaintiff for furnishing materials and for finishing the work to be done by said McKenzie thereunder, in the event the work was taken over by plaintiff, by an audit and certificate of the architects, the failure of the plaintiff to produce such an audit and certificate of such expenses entitled the defendant to a verdict and judgment. Kansas City E. & P. Ry. Co. v. Perkins, 88 Texas, 77; Childress v. Smith, 90 Texas, 616.

There was absolutely no proof as to what the labor and materials were or what they were reasonably worth, except the item of $333 for painting, or that they were necessary to be incurred in order to complete defendant's contract. Missouri, Pac. Ry. Co. v. Platzer, 73 Texas, 124; Gulf, C. & S. F. Ry. Co. v. McGowan, 73 Texas, 363; Fordyce v. Beecher, 2 Texas Civ. App., 34; O'Connor v. Smith, 84 Texas, 238; Edloff v. Mason, 79 Texas, 218; Altgelt v. Brister, 57 Texas, 436; Taylor v. Williams, 26 Texas, 583.

This defendant alleged two alterations in the specifications, and the court, by the foregoing charge makes it incumbent on him to establish both alterations, when proof of either alteration, if material, in the opinion of the jury, would have rendered the contract nugatory, and entitled this defendant to a verdict. Miller v. Alexander, 13 Texas, 505; Park v. Glover, 23 Texas, 473; Harper v. Stroud, 41 Texas, 372; Anson on Contracts (2d Am. ed.), star page 327 et seq., and authorities cited.

*Hogg, Watkins & Jones,* for appellant, Fidelity and Deposit Company of Maryland.—Where the surety signs a bond providing that the owner shall keep and perform all the provisions thereof, as well as of the building contract upon which the bond is based as a condition precedent to a recovery thereon, and where one of such provisions is, that the owner shall not pay to the contractor more than 80 percent of the value of the material and labor wrought into the building, a breach of this provision by the owner releases the surety. Ryan v. Morton, 65 Texas, 258; Sanders v. Hambrick, 16 Texas Civ. App., 461; House v. American

Surety Co., 54 S. W. Rep., 303; United States v. Freel, 186 U. S., 309, and cases cited; Backus v. Archer, 109 Mich., 668; Evans v. Graden, 125 Mo., 77; Taylor v. Jeter, 23 Mo., 244; Law v. East India Co., 4 Vesey, 824; Mundy v. Stevens, 9 C. C. A., 366, 61 Fed. Rep., 77; Tennant v. Fawcett, 94 Texas, 111; Sanger v. Slayden, 7 Texas Civ. App., 609; Borden v. Houston, 2 Texas, 607; McClenney v. Floyd, 3 Texas, 116; Smith v. Doak, 3 Texas, 222; Burke v. Cruger, 8 Texas, 70; Wylie v. Hightower, 74 Texas, 306; Coe v. Nash, 91 Texas, 113; Moroney v. Coombes, 13 Texas Ct. Rep., 527.

"A surety is bound by the terms of his contract, and his liability can not be extended beyond it. If the contract be altered without his consent, whether he sustain injury or the contract be to his advantage, it ceases to be his contract, and with that ceases his obligation." Durrell v. Farwell, 88 Texas, 98, 107; Ryan v. Morton, 65 Texas, 260; Smith v. Montgomery, 3 Texas, 209; Lane v. Scott, 57 Texas, 370; Brandt on Surety, sec. 376 (3d ed.) ; Robeson v. Roberts, 20 Ind., 155; Mayhen v. Boyd, 5 Md., 102; Watriss v. Pierce, 32 N. H., 560; Cunningham v. Wrenn, 23 Ill., 64; Bethune v. Dozier, 10 Ga., 235.

In a suit on a contract against the principal and surety therein, when the surety alleges an alteration in the contract after its execution, and where the plaintiff offered evidence tending to show no alteration, and the defendant surety offered evidence showing, if true, that such contract was altered, and where the contract showed on its face that the alleged alterations were interlined, it was error for the court to charge the jury that the burden of proof was on the defendant to establish such alteration. Stookbury v. Swan, 85 Texas, 566; Texas & Pac. Ry. v. Geiger, 79 Texas, 13, 21; Western U. Tel. Co. v. Bennett, 1 Texas Civ. App., 560.

Where any suspicion is raised as to the genuineness of altered instruments, the party producing the instrument and claiming under it is bound to remove suspicion by accounting for the alterations. Miller v. Alexander, 13 Texas, 497, 505; Bullock v. Sprowls, 54 S. W. Rep., 657, 661; 1 Greenleaf Ev., sec. 564; Stokes Ev., pp. 500, 501.

Where a defendant pleads two or more material alterations in an instrument it is error to charge the jury that all such alterations must be proved before a defense is made out. London & G. Ins. Co. v. Joy, 64 S. W. Rep., 786.

A verdict in favor of a plaintiff against the surety and failing to find against the principal is indefinite, and is void as to the surety, and not a sufficient basis for any judgment against the surety. Moore v. Moore, 67 Texas, 293-297; Gulf, C. & S. F. v. Hathaway, 75 Texas, 558, 559; Gulf, C. & S. F. Ry. v. Renfro, 69 S. W. Rep., 648.

*Andrews, Ball & Streetman,* for appellee.—In determining whether a verdict authorizes a judgment upon an issue, the court will look to the pleadings and the charge of the court, and if, under such pleadings and charge of the court, the verdict of the jury necessarily involved a finding upon such issue, a judgment upon said issue is authorized. Pearce v. Bell, 21 Texas, 688, and cases cited. The case of Pearce v. Bell has been cited with approval in the following cases: Tarkington v. Broussard, 51 Texas, 555; Jones v. Ford, 60 Texas, 131; Day v. Cross, 59 Texas,

608; Gulf, C. & S. F. v. James, 73 Texas, 18; St. Louis, A. & T. Ry. Co. v. Henderson, 86 Texas, 309; Texas, E. & C. Co. v. Mitchell, 7 Texas Civ. App., 235; Ablowich v. Greenville Nat. Bank, 67 S. W. Rep., 79.

Under the contract the architect, Glover, was made the sole judge as to whether the work was done in accordance with the contract, and in the absence of fraud his decision was conclusive, and the charge was a proper recognition of this principle. Brin v. McGregor, 45 S. W. Rep., 923; Boettler v. Tendick, 73 Texas, 488; Collier v. Betterton, 29 S. W. Rep., 490; Wright v. Meyer, 25 S. W. Rep., 1122.

Fraud is not presumed. Therefore, if no peculiar circumstances of suspicion attach to an altered instrument, the alteration is supposed to be innocent, to have been made prior to its execution. Rodriguez v. Haynes, 76 Texas, 225; Kansas Mutual Life Ins. Co. v. Coalson, 22 Texas Civ. App., 64.

Fraud not being presumed, and it being necessary for defendant to specially plead the fraudulent alteration of a contract sued upon, the burden of proof would necessarily fall upon the defendant to prove such fraudulent alteration. Kansas, etc., Co. v. Coalson, 22 Texas Civ. App., 64; Gulf, C. & S. F. Ry. Co. v. Sheider, 88 Texas, 152.

Where defendant specially pleads alteration of an instrument, this admits the execution and puts the burden of proving the alteration on the defendant. Irvin v. Garner, 50 Texas, 52; Wells v. Moore, 15 Texas, 522; Muckleroy v. Bethany, 27 Texas, 551.

Where the contract provided that payments are to be made upon the estimate of the architect, such estimate is conclusive upon the parties in the absence of fraud.

The contract in this case having made the estimates of the architect conclusive upon the parties, Barrett was compelled to pay upon his estimates, in the absence of any knowledge that they were incorrect. Bain v. McGregor, 45 S. W. Rep., 923; Boettler v. Tendick, 73 Texas, 488; Collier v. Betterton, 29 S. W. Rep., 490; Wright v. Meyer, 25 S. W. Rep., 1122.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit by appellee against P. A. McKenzie as principal, and The Fidelity and Deposit Company of Maryland as surety upon a bond executed by defendants to secure the faithful performance by McKenzie of a contract made by him with appellee for the construction of a dwelling house in the city of Houston.

The petition alleges the execution of the contract and bond and that McKenzie abandoned his contract and plaintiff was compelled to complete the same at a cost and expense of $923.92 over and above the amount agreed to be paid by him in said contract.

McKenzie answered by general and special exceptions and general denial, and specially denied that he had voluntarily abandoned the contract. He also pleaded that the plans and specifications had been materially changed without his knowledge and consent after the execution of the contract, and that plaintiff and his architect had conspired to defraud him and refused to allow him to complete the building in accordance with his contract, but demanded of him other and different work from that required by the contract, and for that reason he was com-

pelled to abandon the work. He further pleaded that the certificates issued by the architect for the amounts expended by plaintiff in completing the building were fraudulently made for a much larger amount than was required to complete the work.

The defendant surety company adopted the answer of its codefendant, and further pleaded breaches by plaintiff of the conditions of the bond upon which the suit was brought.

The cause was tried by a jury and upon a verdict in favor of plaintiff judgment was rendered in his favor against both defendants for the sum of $902, with judgment over in favor of the surety company against the defendant McKenzie for a like amount.

The contract sued on was made on January 7, 1903, and under its terms the defendant McKenzie agreed and undertook to construct the buildings therein described according to the plans and specifications attached to said contract, and under the supervision and to the satisfaction of plaintiff's architect, F. S. Glover, for the sum of $3,750. This contract provides that payments may be made to the contractor in installments, "Upon certificates issued once every two weeks to the amount of 80 percent, of the labor and materials in the buildings and the remaining 20 percent, to be retained until the final completion and acceptance of the buildings by the architect, F. S. Glover." In event the contractor should fail to comply with his contract the owner was authorized to take charge of the work and complete same according to the contract, and if the unpaid balance due the contractor at that time should exceed the expense incurred by the owner in completing the work he shall pay such excess to the contractor, but if the cost of completing the work should exceed the balance due under the contract the contractor was bound to pay such excess to the owner. "The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architect whose certificate thereof shall be conclusive upon the parties."

Article 10 of the contract is as follows: "It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials."

The bond executed by the security company contains the following provisions:

"Whereas, said principal has entered into a certain written contract, bearing date the 8th day of January, A. D. 1903, with said owner, to furnish all of the labor, materials and other things requisite, and to do and perform all things contemplated by said contract, which contract, together with all its terms, covenants, conditions, specifications and stipulations, is incorporated herein and made to form a part hereof as. fully and amply, to all intents and purposes, as if said contract was recited at length herein." . . .

"This bond is executed by the surety upon the following express conditions, which shall be conditions precedent to the right of the owner to recover hereunder:

"The owner shall keep, do and perform each and every, all and singular, the matters and things set forth and specified in said contract to be by the owner kept, done and performed and exclusively at the times and in the manner in said contract specified. . . .

"The said owner shall retain the last payment and reserve due said principal until the complete performance by said principal of all the terms, covenants and conditions of the contract on said principal's part to be performed, and until the expiration of the time within which liens or notices of liens may be filed, by reason of anything done in or towards the performance of said contract, and until the cancellation and discharge of such liens, if any; and said surety shall be notified, in writing, before the last payment shall be made or said reserve paid."

Sometime in April, 1903, McKenzie quit work under the contract and plaintiff took charge of the work and completed the building. The testimony is conflicting upon all of the issues raised by the pleadings, but there is sufficient evidence to sustain the findings of the jury that McKenzie defaulted in his contract and that it cost plaintiff $902 to complete the work over and above the balance due under the contract at the time McKenzie abandoned it; and that said amount was audited and approved by the architect as provided in the contract, and was the necessary and reasonable cost of completing the work in accordance with the contract.

The appellants have filed separate assignments of error and separate briefs.

We shall not discuss the various assignments in detail and unless otherwise stated the questions considered and determined in this opinion are raised by both appellants.

The verdict of the jury is as follows: "We, the jury in this case, find for the plaintiff to the amount asked, namely, $902.92, against the defendant bond company, and judgment against the defendant McKenzie in favor of the bond company for like amount, together with $200 attorney's fees."

Appellants contend that this verdict did not authorize a judgment in favor of plaintiff against McKenzie, and the surety company urges that the judgment against its principal not being authorized by the verdict no valid judgment could be rendered thereon against the surety.

We think the verdict necessarily includes a finding by the jury in favor of plaintiff against McKenzie, and the trial court did not err in so construing it and rendering judgment accordingly. Under the pleadings, evidence and charge of the court no verdict could have been found against the surety company unless the jury found in favor of plaintiff against McKenzie. That the jury intended to find against McKenzie for the amount due plaintiff is evidenced by its finding such amount against him in favor of the surety company. Viewed in the light reflected upon it by the entire record, we think the finding of the jury against McKenzie in favor of the surety company for the amount found to be due the plaintiff clearly evidenced their intention to find said amount against him in favor of plaintiff. (Pearce v. Bell, 21 Texas, 688.)

Our conclusions of fact before stated disposes of the assignments assailing the judgment on the ground that there is no evidence to sustain

the finding that the amounts expended by plaintiff in the completion of the work were audited and certified by the architect, or that such expenditures were reasonable. The itemized account introduced in evidence by the plaintiff was not accompanied by a certificate of the architect, but was subscribed by him, and he swore on the stand that he had approved and certified each of said items. We think this was a substantial compliance with the contract requirement that the amounts so expended should be audited and certified by the architect, and under said provision of the contract such verification of the account was conclusive.

We are also of opinion that the allegations of the petition that the amounts expended by plaintiff in the completion of the building was "necessarily and properly expended therefor," was, in the absence of a special exception, sufficient to admit proof of the reasonableness of such expenditures. Upon this issue the architect testified as follows:

"I completed that contract according to the plans and specifications. I did not do anything in the least in variance to the plans and specifications. I gave certificates for these bills after McKenzie gave over the contract. . . . I had a foreman, and I went out there two or three times a day; of course, I would not neglect my office to stay out there all day; I had to trust a little, of course; I could not tell whether they worked when I wasn't there or not, but the foreman I had was a good man, and I believe yet he was a good man. I got the work done as economically as I could; I had no disposition to do otherwise."

While there is testimony to the effect that the building could have been completed at much less cost, the evidence above quoted is sufficient to sustain the finding of the jury upon this issue, and the point is not made that such finding is so against the preponderance of the evidence as to require this court to set it aside.

The defendants alleged in their answer that the specifications which were made a part of the contract had been changed without their knowledge or consent after the contract was executed by writing in the paragraph relating to painting the words "house" and "barn" between the words "exterior" and "including," and adding to said paragraph the words "on both buildings, the exterior to receive two coats of paint, all colors to be selected by the owner and architect."

There was evidence to the effect that these interlineations and additions to the specifications were made as alleged after the contract was executed and without the knowledge and consent of defendants. Upon this issue, after reciting in his charge the allegations of the petition above mentioned, the court instructed the jury as follows:

"The burden of proof is on the defendants, McKenzie and the bond company, to establish alteration of the specifications after they were executed, and if you find that they have established such alteration by a preponderance of the evidence, and find that they were altered to the extent above set forth, after they had been signed by McKenzie and Barrett, then you will find for the defendants and inquire no further, and you will state by your verdict that you find such alteration to have been a fact. If you do not find the specifications were altered as alleged, then you will proceed to inquire further, guided by the following instructions."

This charge is objected to on the ground that it erroneously placed

the burden upon the defendants to establish the alterations alleged, and further, because it only authorized the jury to find for defendants in event they believed that all of the alterations alleged were made when proof of either of said alleged alterations was sufficient to entitle defendants to a verdict.

The general rule that if on the production of an instrument in writing it appears to have been altered it is incumbent on the party offering it to explain this appearance, is modified by the further rule that if there is no peculiar circumstances of suspicion attached to the altered instrument the alteration is presumed to have been made prior to or contemporaneous with its execution. Under this rule the mere fact that there were interlineations in the instrument would not relieve the defendants of the burden of proving that such interlineations were made after the instrument was executed. The execution of the instrument was not denied by the defendant, and plaintiff did not deny, but admitted, that the interlineations were made by him or by his architect, the only issue raised being whether they were made before or after the contract was executed. We think upon this issue the trial court properly placed the burden upon defendants to prove, as alleged by them, that the interlineations were made after the execution of the contract. (Rodriquez v. Haynes, 76 Texas, 225; Kansas Mut. Life Ins. Co. v. Coalson, 22 Texas Civ. App., 64.)

There was no affirmative error in instructing the jury in effect that if they believed that all of the alterations were made as alleged by the defendants they should find for defendants. That the defendants under such circumstances would be entitled to a verdict is a correct statement of the law so far as it goes. It is equally clear that if any one of the alleged material alterations was made the defendants were entitled to a verdict, but the omission of the court to so instruct the jury can not be complained of in the absence of a request for such instruction. No such request was made by the defendant McKenzie, and his assignment complaining of this charge can not be sustained. The appellant surety company requested such a charge and its assignment of error complaining of the refusal of the court to give the requested instruction must be sustained.

It is urged by appellant surety company that the judgment against it must be reversed because the undisputed evidence shows that the plaintiff had paid the defendant McKenzie more than 80 percent of the work done upon the building at the time he abandoned it, and under the terms of the bond sued on the surety was released from all liability thereon if the plaintiff failed to retain 20 percent of the contract price until the building was completed.

It may be conceded for the sake of argument that more than 80 percent of the value of the work done on the building was paid the contractor, but unless plaintiff knowingly made payments in excess of the 80 percent the surety would not be released. The contract, which was made a part of the bond, required the plaintiff to pay the contractor every two weeks as the work progressed upon certificates of the architect showing the amount due under the contract. The plaintiff and the architect both testified that all payments made were made on certificates furnished by the architect. If by the mistake of the architect, or by collusion between

him and the contractor these certificates were made for more than 80 percent of the value of the work and material placed in the building plaintiff could not be held responsible for such mistake or fraud unless he knew of it at the time he made the payments. The contract required him to pay the amounts certified by the architect to be due, and the provisions of the bond upon which appellant relies to sustain the contention that the payment of more than 80 percent to the contractor prior to the completion of the building would release the surety, recites as one of the conditions upon which the bond was executed, that "the owner shall keep, do and perform, each and every, all and singular, the matters and things set forth and specified in said contract to be by him kept, done and performed and exclusively at the times and in the manner in said contract specified."

There is no provision of the bond which can be construed to mean that if plaintiff in paying the amounts called for in the certificates of the architect, without any knowledge that such certificates were not correct, should make a payment in excess of 80 percent of the value of the work done, the surety upon the bond should be released. The bond does not absolutely require plaintiff not to pay more than the 80 percent, but requires him to pay in accordance with the terms of the contract, and the contract, as we have seen, requires him to pay on the certificate of the architect. We think it clear under the provisions of the contract and bond that the surety would not be released by the payment by plaintiff of more than the 80 percent unless such payment was knowingly made by him. This issue was properly submitted to the jury and the evidence sustains the finding that plaintiff did not knowingly pay the contractor more than 80 percent of the value of the work done by him.

No other questions are presented which require our consideration. The judgment of the court below in favor of plaintiff against appellant McKenzie is affirmed, and the judgment against the surety company is reversed and the cause as to it remanded.

ON REHEARING.

In our opinion heretofore filed in this cause we held that the judgment of the court below against the appellant bond company should be reversed, because of the failure of the court to give the jury an instruction requested by said appellant to the effect that if they believed from the evidence that either of the alterations claimed by the defendants to have been made in the contract after its execution and without their knowledge or consent were so made, that such alterations were material and they should find for the defendant bond company.

The paragraph of the contract alleged to have been altered is as follows:

"Painting: The exterior of building to be painted over with two good heavy coats of paint composed of pure white lead, zinc and raw linseed oil in such colors as will be directed by the architect. This includes all finish woodwork on the exterior (house and barn) including porch floors above and below and all galvanized iron and tin work (on both buildings, the interior to receive two coats of paint, all colors to be selected by the owner and architect.)"

This clause, according to the contention of appellants, was written with a typewriter and the alterations hereafter stated were made with pen and ink and were alleged to have been fraudulently made.

The alterations alleged were the insertion of the words "house and barn" between the words "exterior" and "including," and in adding the words "on both buildings, the exterior to receive two coats of paint, all colors to be selected by owner and architect."

The motion for rehearing filed by appellee points out the following paragraph of the contract which is not charged by the defendants to have been altered:

"Fencing: Build 294 ft. of 3" 6" picket fence, same to have 4" x 6" all heart cypress post, 2" x 4" rail, ⅞" x 10" base, with 2" water table, 1¼" x 1¼" square pickets, and clover leaf mould. All put up and given two coats of paint. Build 238 feet of 5 feet board fence 4" x 6" cypress posts, 2" x 4" rail, ⅞" x 10" plank, with 10" base at bottom. All to be painted two coats of paint composed of white lead and linseed oil, same as barn and main building."

We think it clearly appears from this paragraph that the contract required the painting of the barn, and therefore the insertion of the words "house and barn" in the paragraph relating to painting was not a material alteration and the requested charge was properly refused.

We have carefully considered the motions for rehearing filed by both appellants and adhere to our former conclusions upon the points presented by said motions, except that we are inclined to the opinion that if the alleged alterations in the contract had been shown to be material the charge of the court submitting that issue would have been affirmative error, which would entitle appellant McKenzie to a reversal of the judgment.

Having found, however, that the alleged alterations were not material, there is no error in the charge of which appellants can complain and their motions for rehearing are overruled.

The motion of appellee for rehearing is granted, and our former order reversing the judgment against the appellant bond company is set aside and it is now ordered that the judgment of the court below against both appellants be affirmed.

*Affirmed.*

Application for writ of error dismissed.