CARVER BROS. v. MERRETT et al.[*]
(No. 1556.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 31, 1916. Rehearing Denied Feb. 16, 1916.)

1. VENUE ⊂⊃27—SUIT BY BONA FIDE HOLDER OF ACCOUNT—STATUTE.
   Under Rev. St. 1911, arts. 1830, 1842, providing that no inhabitant of the state shall be sued out of the county in which he has his domicile, except in certain cases, and that several obligors to any contract may be joined, a bona fide holder for value of an account could bring suit thereon against a bank, assignor and guarantor of the account, jointly with the parties primarily liable thereon, in the county of the residence of the bank, though the parties primarily liable were resident elsewhere.
   [Ed. Note.—For other cases, see Venue, Cent. Dig. § 41; Dec. Dig. ⊂⊃27.]

2. JUDGMENT ⊂⊃589(2)—BAR—RECOVERY UPON TORT AND CONTRACT.
   The assignor of an account could not recover thereupon, and also for a tort growing

out of the same transaction, as it would constitute a double recovery.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062–1065, 1101; Dec. Dig. 589(2).]

**3. VENUE 8—SUIT FOR CONVERSION—STATUTE—"TRESPASS."**

Under Rev. St. 1911, art. 1830, subd. 9, providing that, when the foundation of a suit is some crime, offense, or trespass for which a civil action in damages may lie, the suit may be brought in the county where such crime, offense, or trespass was committed, or in the county where the defendant has his domicile, where the agent of a copartnership converted securities at Titus county which the partnership had pledged with a bank, and which the bank had returned temporarily to the agent for the special purpose of making up his accounts, the assignee of the bank could sue the copartnership in Titus county, though such copartnership was resident elsewhere, for damages for the conversion, since a pledgee may maintain an action of trover against his pledgor for a conversion of collateral which the former has returned to the latter for a special purpose, while the act of the copartnership's agent was a "trespass" within the statute; the taking and appropriating having been intended, and not merely negligent.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 17; Dec. Dig. 8.

For other definitions, see Words and Phrases, First and Second Series, Trespass.]

**4. PLEADING 111 — PLEA OF PRIVILEGE — BURDEN OF PROOF.**

In a suit for conversion, plaintiff was bound to overcome a plea of privilege by proof that the conversion was committed in the county of suit.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 234–236; Dec. Dig. 111.]

**5. APPEAL AND ERROR 1170(9)—HARMLESS ERROR—INSTRUCTION—RULE OF COURT.**

Under rule 62a of the Court of Civil Appeals (149 S. W. x), prohibiting reversal for harmless error in a suit for conversion, where defendants pleaded privilege, a charge technically incorrect in placing the burden of proof respecting the plea on the defendants, but practically putting the burden of proof on plaintiff, did not warrant reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4543; Dec. Dig. 1170(9).]

**6. JUDGMENT 256(5) — SUPPORT BY VERDICT.**

In suit by the assignee of a bank which guaranteed collection against it and its debtor, where, under the charge peremptorily directing verdict against the bank for plaintiff, the bank having confessed liability on its guaranty before the jury could find for the bank against the other defendants, they were required also to find for plaintiff against both the bank and defendants, the action of the court in entering judgment for plaintiff against the defendants other than the bank upon a verdict that the jury found for the plaintiff on the merits of the case against the bank, and further found for the bank against the other defendants, was proper.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 451; Dec. Dig. 256(5).]

**7. PRINCIPAL AND AGENT 159(1)—TORT OF AGENT—CONVERSION.**

Where the agent for dealers in cotton, acting within the scope of his authority, obtained from the bank with which they had been pledged by the dealers cotton tickets to make a list, and thereafter refused to deliver possession of

the tickets to the bank, the dealers were liable to the bank for damages occasioned by the refusal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 599–605; Dec. Dig. 159(1).]

**8. PRINCIPAL AND AGENT 193—LIABILITY FOR AGENT'S TORT—QUESTION FOR JURY.**

In suit by the assignee of a bank against the bank and cotton dealers whose agent converted from the bank cotton tickets pledged by the dealers, whether the bank was negligent in letting the agent have access to the tickets was a question for the jury.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 721½–726; Dec. Dig. 193.]

**9. PRINCIPAL AND AGENT 193—LIABILITY FOR AGENT'S TORT—QUESTION FOR JURY.**

In suit by the assignee of a bank against the bank and cotton dealers whose agent converted from the bank cotton tickets pledged by the dealers, whether the agent, in securing possession of the tickets, was acting within the scope of authority actually conferred upon him, held for the jury.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 721½–726; Dec. Dig. 193.]

**10. PRINCIPAL AND AGENT 99—SCOPE OF AUTHORITY.**

Where cotton dealers advised a bank that P. would "represent us in your city," the bank had the right to construe the language to mean that the dealers had authorized P. to do everything usually, customarily, or necessarily done by a nonresident cotton buyer's local agent.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 254–261; Dec. Dig. 99.]

Appeal from District Court, Titus County; J. A. Ward, Judge.

Suit by John Merrett against Carver Bros., a copartnership, and another. From a judgment for plaintiff, the named defendants appeal. Affirmed.

See, also, 155 S. W. 633, 174 S. W. 929.

The suit is by appellee, Merrett, seeking to recover the sum of $1,773.39 against appellants, a copartnership, and the Merchants' & Planters' National Bank. The petition alleged that Carver Bros. were during the fall of 1911 cotton merchants, with their residence and principal place of business in Collin county, Tex., and operating and buying and selling cotton throughout many counties in Texas, including Titus county; that on September 27, 1911, a contract was entered into between Carver Bros. and the bank by the terms of which the bank agreed to pay for cotton bought by them through their agent and representative, and Carver Bros. agreed and promised to refund to the bank any and all sums so advanced, together with 10 per cent. interest per annum, and the costs of yardage and weighing; that during that season the bank paid out $67,417.31, including interest, and that Carver Bros. had repaid $65,646.28, leaving a balance of $1,773.39 still due the bank; that the bank transferred and sold this account to plaintiff, and guaranteed its payment. A second count

of the petition alleges substantially that the bank held as collateral and as a pledge to secure the payment of the account of $1,773.-39 44 bales of lint cotton, property of Carver Bros., and of the value of $45 per bale, which was represented by cotton tickets issued by Hammond & Culver and in the possession of the bank; that the agent of Carver Bros. came into possession of the cotton tickets and cotton while acting in the scope and apparent scope of his authority and in the course of his employment, to prepare shipping lists, make reports, and check the cotton, and after getting possession of the cotton tickets and cotton for the temporary purpose such agent and Carver Bros. failed and refused to return the same, and appropriated and converted the cotton and tickets; that this was done in Titus county; that the bank sold and transferred this claim for damages to plaintiff, and guaranteed its payment. The bank by its answer admitted liability as a guarantor of the account and the claim for damages, and prayed for judgment over and against Carver Bros. for the same judgment that might be rendered against it. Appellants, Carver Bros., first answered by plea of privilege to be sued in the county of their residence. A jury being demanded, the plea of privilege was submitted to the jury along with the merits of the case. Subject to the plea of privilege appellants answered that they were not liable for the 44 tickets nor indebted in the sum sued for; that they had received only 1,432 bales of cotton and cotton tickets from the bank; that the bank was not authorized to pay for any cotton except with the cotton tickets attached; that the bank was negligent in respect to the cotton tickets, causing damages to appellants to the amount sued for; and in offset. A jury rendered a verdict against appellants' plea of privilege and against appellants for damages.

The facts proved on the trial show that Carver Bros. reside at Farmersville, Collin county, Tex., and were during the years 1911 and 1912 engaged in buying and selling cotton. In September, 1911, Carver Bros. addressed the following letter to the cashier of the Merchants' & Planters' National Bank of Mt. Pleasant:

"Dear Sir: This will introduce to you Mr. J. W. Pierce, who will represent us in your city, and we hope he will be able to buy some cotton on the streets for us, and we would like for you to pay for cotton bought by him for us with tickets attached for us, and we will ship out and give you exchange on either Sulphur Springs or Pittsburg. We do not know whether it is your custom or not to figure the tickets on street cotton for the buyer. If you will do this, we will appreciate it, and it will also help Mr. Pierce. Any favors shown him will be greatly appreciated by us."

The bank agreed to this proposal, and entered into an agreement with Carver Bros. to the effect that they would pay for such cotton as J. W. Pierce would buy for the account of Carver Bros. when Pierce placed with or caused to be placed with the bank tickets issued by cotton weighers showing the weight of the cotton and the price to be paid therefor. It appears without dispute that these tickets were to remain with the bank as collateral security for the money advanced in paying for the cotton. Pierce then began buying cotton for the appellants, and during the season purchased a large number of bales, all of which seem to have been paid for by the bank. Pierce himself had no interest in the cotton. In buying the cotton his custom was to give to the seller a slip of paper or ticket on which was noted the weight, price paid, and the weigher's number. He also noted the letters "O. K." and signed his initials. These slips were presented to the bank by the seller, and the amount called for was paid and charged to Carver Bros. It was Pierce's duty at stated intervals to make reports to his employers of the amount and quality of cotton bought by him. He was also expected to ship out certain quantities and grades of cotton as directed by his employers. For the purpose of performing these duties he was given access to the tickets held by the bank. He used them in making up his invoices to be sent to his employers, and was also permitted to use them in making out shipping lists, and, for the purpose of obtaining the bales from the weigher, was allowed to withdraw the tickets corresponding to the cotton he desired to ship. When shipped he would deliver to the bank, in lieu of the tickets taken out, bills of lading. These were attached to drafts upon the purchasers; and in that way the bank was reimbursed for advances made. This manner of doing business continued until some time in December, when, for reasons not disclosed, Pierce quit the service of the appellants, and was succeeded by an agent named Walter. Walter, in behalf of the appellants, in connection with the officers of the bank, checked up the number of tickets the bank had on hand, and found that 44 of them were missing. The evidence indicated that Pierce had appropriated the tickets. Testimony was introduced by the bank showing that none of the employés who had access to the tickets had appropriated any of them. There was also testimony tending to show that the officers of the bank exercised proper care to safely keep the tickets, and that no person had an opportunity to appropriate them except Pierce. Pierce, it appears, received the benefit of 30 bales of the cotton, and Carver Bros. received no benefit therefrom except the sum of $400 paid by the insurance company. It appears that it was necessary, in the handling of Carver Bros.' cotton at Mt. Pleasant, that certain charges of yardage, weighing, and storing should be paid for, which was done by the bank at the instance and request of Carver Bros.' agent.

The evidence authorized the findings that Pierce obtained possession temporarily of the

cotton tickets and cotton held as collateral security by the bank, in furtherance of the service of Carver Bros., and within his authority of agency so to do, and then converted the same, and that the collaterals were held by the bank to secure a debt due by Carver Bros. in the sum of $1,773.39, and that the bank was not guilty of negligence in handling the tickets or cotton. The bank transferred its claim for damages against Carver Bros. to appellee, Merrett, who resided in Titus county, and in the transfer guaranteed the payment of the claim.

S. P. Pounders and J. M. Burford, both of Mt. Pleasant, for appellants. T. C. Hutchings, of Mt. Pleasant, and L. E. Keeney, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). [1-3] By the first, second, and third assignments of error, which may be here considered conjointly, the appellants urge that the legal effect attaching to the evidence respecting the ground of venue is to deny the legal right to appellee, Merrett, to bring suit against the appellants in Titus county, and that they were entitled to have the case transferred for trial to the district court of Collin county, the county of their residence. It is believed that the assignments must be overruled. Appellee, Merrett, sued the appellants in two counts: (1) Upon an account for money advanced and paid by the bank; and (2) for damages laid in conversion in Titus county of collateral security pledged to the bank to secure the payment of the account. The bank was joined as a party, and sued as assignor and guarantor of both the account and the claim for damages. Being a bona fide holder for value of the account, as appellee Merrett claims he was, he may bring the suit thereon against the bank, as assignor and guarantor of the account jointly with appellants, who were primarily liable on the account, in the county of the residence of the bank, which was in Titus county. Article 1842, R. S.; article 1830, subd. 4, R. S.; Improvement Co. v. Bank, 136 S. W. 558, and authorities there cited. But it is entirely immaterial and unnecessary to decide in this appeal, it is believed, the question of whether or not the transfer of the account to appellee, Merrett, was real and in good faith for value, for the charge of the court did not permit nor authorize a recovery against appellants upon the account, but only for damages, for the tort of conversion. And the charge of the court made the venue of the suit in Titus county dependent upon the sole ground of the tort's being committed there and appellants' being responsible therefor. The charge in respect to venue is:

"If you find from the evidence that said Carver Bros., and each of them, were resident citizens of Collin county, Tex., at the time this suit was filed, and have been continuously, and are now, and were not then nor have been since residents of Titus county, you will find for the defendants Carver Bros., unless you find for the plaintiff against them on one or the other of the next following paragraphs of this charge."

The next two paragraphs following allowed venue in Titus county upon a finding that there was a conversion of the collateral security by appellants through their agent and representative in Titus county within the scope of the agency, and upon a finding that the bank did not negligently permit the agent to abstract the security. The charge would therefore seem to show that the court himself concluded that venue did not lie in Titus county against the appellants on the account, or that election was made by appellee to rely for recovery only upon the count for tort. The appellee may not recover upon both the account and the tort, for it would be double recovery, and it was a case that appellee should elect to recover upon one of the counts. So eliminating, as the present record does, any question of venue respecting that count in the petition on simple account for money advanced and paid, the precise question would be whether the suit was maintainable against appellants in Titus county, as the proper county of venue, for damages for the alleged conversion of the securities. Article 1830, subd. 9, allows suits to be brought in the county "where the trespass was committed," when "the foundation of the suit is some crime, or offense, or trespass, for which a civil action in damages may lie." Jones' Pledges and Collateral Securities (2d Ed.) § 45, lays down the rule as follows:

"A pledgee may maintain an action of trover against his pledgor for a conversion of collaterals which the former has returned to the latter for a special purpose. * * * After the special and temporary purpose for which a pledge has been redelivered to the pledgor has been accomplished, the pledgee may recover it or its value by action."

See, also, 2 Cooley on Torts (3d Ed.) pp. 859, 866.

That sufficiently shows that a civil action in damages may lie in the facts. And it is believed that "trespass," as meant by the statute and defined by the cases, includes the act of conversion here present. Hill v. Kimball, 76 Tex. 210, 13 S. W. 59, 7 L. R. A. 618; Ricker v. Shoemaker, 81 Tex. 22, 16 S. W. 645; Ward v. Odem, 153 S. W. 634. In a conversion the taking and appropriating are intended, and not merely negligent. And withholding lawful possession of the pledgee is, while it continues, an injury by force, constituting it a trespass on possession of the owner. 2 Cooley on Torts (3d Ed.) p. 839. Thus all the elements of a "trespass," as defined, are present, and, further, the criminal statutes make punishable the taking and appropriating of property pledged from the pledgee entitled to possession. Articles 1335, 1336, 1332, Cr. Stat. of 1911. Consequently, if "trespass," as used in the statute, could only be regarded as comprehending matters legally kindred to "offense or crime," which are the words associated with it in

the sentence, the conversion here by the agent would be within the class of "trespass" intended by the statute pertaining to venue. This would be in line with, rather than opposed to, the rule of construction followed in Bank v. Hanks, 104 Tex. 320, 137 S. W. 1120, Ann. Cas. 1914B, 368. It is quite true that the appellants themselves could not be held criminally responsible for the trespass here. But appellants, acting through an agent, were, in legal principle, bound to see that no one suffered legal injury through the agent's wrongful act done in their service within the scope of the agency. The agent committed the act and wrong in Titus county. The injury done to appellee and the bank by the act or wrong was in Titus county. And upon the ground of being made legally chargeable with the conduct of their agent, acting within the real or apparent scope of his authority, the appellants could be sued for the damages, it is thought, in the county where the trespass was committed. Connor v. Saunders, 9 Tex. Civ. App. 56, 29 S. W. 1140; Wettermark v. Campbell, 93 Tex. 517, 56 S. W. 331. The question of whether the act was committed by the agent within either the real or the apparent scope of his authority was a matter of ultimate decision here for the jury, and their finding that it was in either respect would fix venue on the principal where the trespass was committed.

[4, 5] While the charge was not technically correct in placing the burden of proof respecting the plea of privilege on the appellants (Holmes v. Coalson, 178 S. W. 628), yet, it is concluded, the error does not in the record warrant reversal; for the charge practically put the burden of proof on the plaintiff. The charge required the jury to find for appellants on their plea "unless you find for plaintiff on one or the other of the next following paragraphs." Rule 62a (149 S. W. x).

[6] The verdict of the jury reads:

"We, the jury, find for the plaintiff on the merits of the case against the defendants Merchants' & Planters' National Bank to the amount of $1,773.39. We further find for the said Merchants' & Planters' National Bank over against Carver Bros. to the amount of $1,208.77."

The point is made by proper assignments that the verdict did not authorize a judgment in favor of plaintiff, Merrett, against Carver Bros. as was entered by the court. The manner in which the issues were submitted and the jury directed the verdict necessarily involved a finding on the liability of appellants in favor of appellee, and should be so construed. The charge peremptorily directed the jury to return a verdict against the bank in favor of appellee. This was proper because the bank confessed liability on its guaranty of the claim for damages assigned by it to plaintiff. And the charge further directed the jury as follows:

"If you find for the plaintiff on the merits of the case against the defendant Merchants' & Planters' National Bank and defendant Carver Bros., you will further find for the bank against Carver Bros. the amount so found and stated in your verdict."

Thus before the jury could find for the bank against the appellants they must also find for plaintiff against both the bank and appellants. And finding, as the jury did, that appellants were liable to the bank, necessarily includes in the verdict a finding of fact that appellants were liable in damages for the tort. The appellants being primarily liable, and the bank having assigned and guaranteed to plaintiff the claim for damages, as shown by the pleadings and charge, the finding of fact that appellants owed the bank damages in the sum found legally operated to be a finding of liability in favor of plaintiff. A like contention based on a similar verdict was overruled in McKenzie v. Barrett, 43 Tex. Civ. App. 451, 98 S. W. 229; and we see no reason why a different ruling should be made in this case. The instant question is not analogous to the cases cited by appellants. A verdict against a partnership authorizes a judgment against the members thereof that have been cited or answered.

[7-10] If Pierce, acting within the scope of his authority as the agent of appellants, obtained possession of the cotton tickets for the purpose of making a cotton list, and thereafterwards refused to deliver possession of the tickets to the bank, appellants, we conclude, would be liable to the bank for damages, and consequently appellee for damages occasioned by such refusal. The possession of the tickets by Pierce under these circumstances would legally operate to be the equivalent of the possession of appellants, and Pierce's refusal to return them to the bank would be the equivalent of appellants' refusal to do so. And it is not thought, as appellants insist, that it conclusively appears that Pierce, in securing possession of the tickets, was not acting within the scope of authority actually conferred upon him by appellants. According to the letter of appellants to the bank introducing Pierce to the bank officials, such bank officials were advised that Pierce would "represent us [appellants] in your city." The bank had the right, it is believed, to construe the language to mean that appellants had authorized Pierce to do everything usually, customarily, or necessarily done by a nonresident cotton buyer's local agent in the transaction of his principal's business. 1 Clark & Skyles' Agency, § 194. There was evidence going to support a finding of fact that it was usual and customary for such agent to ship out cotton purchased for his principal, and there is evidence to support a finding that it was necessary for such agent to have possession of the tickets representing the cotton to be shipped, in order to list and ship out the cotton. As to whether or not the bank was negligent in letting Pierce have access to the tickets was a question for the jury. And the

evidence presents, it is thought, an issue of fact, requiring decision by the jury, respecting the several matters urged by appellants both in defense of liability and in offset. It is therefore concluded that the court did not err in refusing to peremptorily instruct a verdict for appellants, and assignment of error No. 9 is overruled.

We have considered the remaining assignments, and overrule each of them upon the ground that no such error appears as would require a reversal of the judgment.

Affirmed.