Phillips *v.* American Liability & Surety Co. (Appellant) et al.

Argued April 13, 1932. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Edward J. Fox,* with him *D. L. McCarthy,* for appel-lant.—While bonds given by surety companies in the or-dinary building contracts are to be regarded as contracts of insurance and not of suretyship, and are to receive liberal construction and not strict construction, it is still within the power of the parties to the contract, viz, in this case, the owner and the surety, that a provision stating in the contract itself that the obligation is one of suretyship only must prevail against this rule: Fels & Co. v. Bonding Co., 48 Pa. Superior Ct. 27; Bessemer Coke Co. v. Gleason, 223 Pa. 84, 86; Bensinger v. Wren, 100 Pa. 500; Loughney v. Huntsman, 252 Pa. 131, 136; Young v. Bonding Co., 228 Pa. 373; McCrum v. Love, 58 Pa. Superior Ct. 404; McCreery v. Surety Co., 226 Pa. 450.

*Frank P. McCluskey,* with him *S. Maxwell Flitter* and *Robert S. Bachman,* for appellee.—Such company can be relieved from its obligations for suretyship only where a departure from the contract is shown to be a material variance, or that the surety company has been injured materially by the variation: Alexandria Water Co. v. Surety Co., 225 Pa. 1; Brandrup v. Brazier, 127 N. W. 424.

The law of Pennsylvania on this subject of strict construction applied to contracts of ordinary suretyship, and where the undertaking is executed on a consideration by a company organized to issue such undertaking, is set forth fully in the cases of Phila. v. Ray, Receiver, 266 Pa. 345; Trustee of the Methodist Episcopal Church v. Surety Co., 269 Pa. 411.

OPINION BY MR. JUSTICE DREW, May 9, 1932:

Henry DePamphilis, one of the defendants in this case, entered into a contract with the plaintiff, Carnig Phillips, for the erection of an addition to plaintiff's dry-cleaning plant, and gave a bond to protect plaintiff from any default in the completion of the work, with the other defendant, American Liability & Surety Company, as surety. DePamphilis failed to finish the building, and the surety declined to do so, whereupon Phillips proceeded to complete the work himself. He then sued the principal and surety on the bond, claiming as damages $5,201.27 as the cost of completing the building over and above the contract price, and $1,155.00 for the delay caused by DePamphilis's failure to finish the work within the time specified by the contract. From judgment on the verdict for plaintiff in the full amount of his claim, the defendant surety appealed.

By the contract between DePamphilis and plaintiff, payments on the contract price of $11,550.00 were to be made as follows: "Eighty-five (85%) per cent of the value, proportionate to the amount of the contract, of materials delivered on the job shall be paid every thirty

days upon the proper vouchers for materials furnished by the inspector, or the architect, if any be employed, and shall be due not later than ten days from the receipt by the architect, if any be employed, or the inspector, of the proper vouchers." Payments on account of labor were to be made in the same way every two weeks. However, in no event were these payments during the progress of the work to exceed 85% of the contract price, the balance being withheld until the building was completed. It was further provided in the contract that "Cessation of work on the job by the contractor [DePamphilis] or upon failure of the contractor to have a sufficient number of skilled workmen on the job according to its size for a period of four continuous days, then the owner [Phillips] at his option may declare the contract broken and proceed with the finishing of the work at the expense of the contractor."

The bond provided, inter alia, that Phillips, the obligee, should faithfully perform all the terms of his contract with DePamphilis, and should retain the portion of the contract price therein stipulated, that the obligation of the surety should be construed "strictly as one of suretyship only," that the surety should not be liable for any damage caused by delay in excess of 10% of the penalty of the bond, or $1,155.00, and that, if DePamphilis failed to finish the building, the surety might, at its option, do so. In the event of a default by DePamphilis it was required in the bond that "A written statement of the particular facts showing such default and the date thereof shall be delivered to the surety by registered mail......promptly and in no event later than ten days after the obligee......shall become aware of such default."

DePamphilis began work under the contract June 3, 1929. One Kraus, a man of experience in the building trade, acted as inspector, on behalf of Phillips and the Easton Trust Company, which was financing the erection of the building. From time to time DePamphilis

would submit statements of the amounts expended by him on payrolls to Kraus, who would then estimate the proportion of the work completed and the value of the materials delivered on the job. From this data he calculated the sum which, in his opinion, DePamphilis ought to receive as a payment on the contract price, setting that amount as 85% of the estimated value of materials furnished on the job plus a like proportion of the payroll, and gave a voucher so certifying to Phillips, who then paid DePamphilis. Phillips testified that he had made no payments, not even those of October 5th and October 19th, unless Kraus had given a voucher so authorizing, but Kraus said he did not recall signing any vouchers after October 1, 1929. DePamphilis was then in financial difficulties, and had trouble meeting his payrolls; consequently he was unable to keep workmen on the job, and the building progressed haltingly after October 1st. In order to prevent cessation of the work, Phillips made two other payments, without vouchers, on October 4th and October 13th, one to a materialman who refused to extend credit to DePamphilis for bricks to be used in the construction, the other to bricklayers who threatened to tie up the job unless they were paid. Kraus refused to sign any more vouchers, because almost 85% of the contract price had been paid. DePamphilis was unable to secure funds, and finally abandoned the job. Kraus testified that the last work was done about October 12th; Phillips, DePamphilis, and two of the latter's workmen testified that the last work was done on October 26th. In all, Phillips paid $9,536.40 toward the contract price before DePamphilis defaulted. There was considerable variance in the testimony as to the proportion of the work completed when DePamphilis quit, the estimates given by different witnesses ranging from 60% to 90%.

On October 18th, plaintiff, by his attorney, informed the surety by registered mail, "that the contractor is not faithfully complying with the terms of his contract, and

......it appears that if conditions are permitted to continue the contractor will be unable to complete this work." Other letters were sent on the 21st and 28th of the month. Following the letter of October 18th, W. A. Doody, general counsel for the appellant and manager of its surety department, on October 25, 1929, had an interview with Phillips and his attorney. Doody suggested that Phillips pay the balance of the contract price to DePamphilis to enable him to go on with the work, the surety waiving its right to demand retention of this sum, but this Phillips declined to do. Doody then proposed that the company would itself undertake the completion of the work, if plaintiff would waive his right to damages for delay, but this suggestion was also refused. However, Doody agreed to have a contractor look over the job before the company would exercise its option to finish the work. Accordingly, one Drake, a construction engineer, examined the unfinished building and made an estimate, to which he testified, that the job could be completed for $4,264.77. On November 2d, no workmen having appeared for five consecutive days, Phillips exercised the option reserved to him to declare the contract broken, and his attorney sent notice to this effect to the surety. This was the first and only instance when the facts permitted Phillips to declare a default under the terms of the contract. He acted promptly and within the time limit provided in the bond. Appellant, however, declined to go on with the building, and on November 11, 1929, Phillips undertook its completion, notifying the surety of this step. Because of uncertainty as to just how much work remained to be done, he was unable to secure bids for the job. The contractor employed was therefore paid on the basis of cost of materials and labor plus 10%, receiving in all $7,214.87. This sum, together with that paid DePamphilis, was $5,201.27 above the contract price, and it was for this added expense that plaintiff sued.

The learned trial judge charged that, as a matter of law, Phillips gave appellant the notice of DePamphilis's default called for by the bond. The jury was instructed that the bond, being that of a corporate surety, was not to be construed strictly, but, if they found that Phillips had not, in all essentials, complied with the terms of the bond and contract, their verdict must be for defendants; on the other hand, if they were of opinion that Phillips had so complied with the terms of the bond and contract, then their verdict should be for plaintiff, but that the latter was entitled to recover only what it should reasonably have cost to complete the building. However, the court charged, if the jury believed that Kraus's estimates were accurate, and honestly made, then the plaintiff committed no breach of the contract in paying according to his vouchers. Affirming a point submitted by appellant, the court further charged that if Phillips failed to retain in his hands the percentage of the contract price required by the contract, appellant was entitled to a credit for all overpayments. The jury having found for plaintiff, appellant moved for a new trial, and for judgment n. o. v. These motions were overruled. That action of the court, together with the entire charge, and particular passages thereof, have been assigned as error.

Appellant contends that the court below erred in charging that, as a matter of law, plaintiff gave the proper notice of the contractor's default, and that the bond, being that of a corporate surety, was not to be construed strictly, but rather as a contract of insurance. And appellant maintains that, even if the rule of construction is as the court below stated to the jury, it is released from all liability because material variances from the terms of the contract, prejudicial to its interests as surety, were made in the course of dealings between plaintiff and DePamphilis, in that the vouchers given by Kraus were not the kind called for by the contract, that payments were made on the contract price

without any vouchers from the inspector, and that Phillips failed to retain in his hands the percentage of the contract price proportionate to the work done required by the contract.

We find no support in the record before us for appellant's contention that the court below erred in charging that as a matter of law plaintiff gave the surety the notice of DePamphilis's default required by the bond. There was no variance or conflict in the testimony as to the date of this happening and therefore no question of fact to submit to the jury. According to the contract, plaintiff could declare a default only upon cessation of work or failure to have a sufficient number of workmen on the job for four continuous days. The only instance shown of a failure to have a sufficient number of workmen on the job for four continuous days began October 26th. Plaintiff sent his first notice to appellant on October 18th, giving full warning of the situation, and in response thereto an officer of appellant investigated the matter. DePamphilis did not cease his efforts to comply with the contract until October 26th, and it was not until four days thereafter that plaintiff was able to take advantage of the provision of the contract permitting him to declare a default. The notice of November 2d, informing the appellant of this, was the only one required by the bond, and it was sent promptly upon the occurrence of the event. These facts were not disputed, and the trial judge therefore charged that there could be no question that proper notice was given. In this we see no error.

Exception is also taken to the charge of the court below that the bond was really a contract of insurance, and that to relieve appellant of liability only a material variance from the terms of the contract, prejudicial to appellant's interests, would suffice. Although it was expressly stipulated in the bond that "the obligation of the surety is and shall be construed strictly as one of suretyship only," appellant cannot now successfully maintain that

such a provision effects a release of the surety from its obligation in the event of any deviation, however slight, from the terms of the contract by the obligee. We have consistently adhered to the principle that where a corporation, as a business for profit, undertakes the obligation of suretyship for a money consideration, only a material and prejudicial departure from the terms of the contract will release the surety: Young v. American Bonding Co., 228 Pa. 373; Loughney v. Huntsman Construction Co., 252 Pa. 131; Phila. v. Ray, 266 Pa. 345; Sokoloff v. Fidelity & Casualty Co. of New York, 288 Pa. 211. This is true even though the bond contains a provision that it is to be construed strictly: M. E. Church v. Equitable Surety Co., 269 Pa. 411. As we said in that case, which was likewise upon a bond given to ensure the faithful performance of a building contract, "True, this bond contains the provision that it 'shall be construed strictly as one of suretyship only'; but in this Commonwealth, as part of its declared public policy, bonds of the character of that here sued upon, which are given for a consideration, are to be so construed as to protect the obligee, and the language above quoted does not prevent our treating it as a 'suretyship' for profit, in accordance with the fact, even if this surety company of another state, coming into Pennsylvania to do business under our law, were permitted, which of course it would not be, to stipulate that its obligation here shall mean other than our law determines it shall mean." The court below committed no error in charging as it did.

However, appellant contends that even under the rule above set forth it cannot be held responsible in damages to plaintiff, because, although it was stipulated in the bond that the plaintiff should faithfully adhere to the terms of the contract between himself and DePamphilis, this was not done, material departures therefrom, to appellant's injury, being made in the manner of making out the vouchers, the mode of payment, and as to the percentage of the contract price to be retained by plain-

tiff. "The test, in the case of a surety of this character, whether the variance complained of is material, is to be found in the answer to the question, whether it substantially increased the chances of the loss insured against." Fels v. Mass. Bonding & Ins. Co., 48 Pa. Superior Ct. 27; Young v. American Bonding Co., supra. This is a question of fact, and it was submitted to the jury with a correct statement of the law. Their verdict in favor of plaintiff necessarily means that plaintiff had, in all essentials, complied with the contract, and it was fully justified by the evidence. Appellant's objection that Kraus prepared the vouchers himself from information supplied by DePamphilis, instead of giving them to him to fill out, as provided in the contract, is purely technical; there is nothing to indicate that this course was in any way injurious to appellant. Nor can appellant complain of the two payments in October admittedly made without vouchers. Far from being to its prejudice, this departure from the terms of the contract was really to appellant's advantage, for had these payments not been made, work on the building would have ceased at an even earlier date, to the greater loss of the surety responsible for its completion. Appellant's objection to the charge of the court that plaintiff could not be considered in default because of his payments on Kraus's vouchers if the latter were accurate and honestly made, inasmuch as those payments exceeded 85% of the proportion of the work done, and thus constituted a material variance from the terms of the contract to appellant's detriment, is likewise without merit. At appellant's request, the jury was charged that if plaintiff had made overpayments, appellant should be given credit for them. Under such instructions, the jury, in rendering a verdict for plaintiff in the full amount of his claim, must be considered to have found as a fact that no overpayments were made. Furthermore, appellant's contention here that overpayments would release it from liability is inconsistent with its position in the court below that the

amount of such overpayments should merely be deducted from plaintiff's claim. Appellant cannot now present the case to us, on appeal, upon a new theory not put forward in the court below: Consolidated Cigar Corp. v. Corbin, 285 Pa. 273; Prenzel v. Apex Hosiery Co., 299 Pa. 17; Magen v. Neiman, 301 Pa. 164. And even conceding that Kraus's estimates paid by plaintiff exceeded 85% of the work done, we do not think he ought to lose his security because of an error of judgment by the inspector. Plaintiff was not a contractor, and was not competent properly to estimate the progress of the work. He had no means of knowing whether or not he was making payments in excess of the contract rate. If plaintiff paid more than he should, it was merely because he paid the vouchers approved by the inspector, as he was obliged to do under the terms of the contract; if he had refused to do so, the surety might, with some propriety, have complained that his action was prejudicial to its interest. Kraus's estimates were binding on the parties to the contract; the appellant was equally bound, and cannot charge plaintiff with responsibility for errors made by the inspector: New Haven v. National Steam Economizer Co., 79 Conn. 482, 65 A. 959; Y. M. C. A. v. Gibson, 58 Wash. 308, 108 Pac. 766; Finney v. Condon, 86 Ill. 78; Chicago v. Agnew, 264 Ill. 288, 106 N. E. 252; McKenzie v. Barrett, 43 Tex. Civ. App. 451, 98 S. W. 229; Hastings Land Imp. Co. v. Empire State Surety Co., 156 App. Div. 258, 141 N. Y. S. 417. The jury was properly instructed as to the law applicable to the case, and their finding that no material departures were made from the terms of the contract is fully supported by the evidence.

In what we have said we have discussed all assignments of error that merit consideration. Appellant further complains that the charge throughout, and in certain particulars, was prejudicial and vague, but an examination of the charge as a whole convinces us that there is no basis for such argument. The charge was

full and impartial, and we deem it unnecessary to undertake a detailed consideration of the objections made. Detached sentences, quoted by appellant, might conceivably support its contention that the charge was prejudicial to its interests, but when they are read in conjunction with the rest of the charge, as they must be, it seems to us that the learned trial judge said nothing of which appellant can reasonably complain.

The assignments of error are overruled and the judgment is affirmed.