WAYMAN WILSON, DEFENDANT IN ERROR, v. MATTHEW
C. D. BORDEN, PLAINTIFF ·IN ERROR.

Argued December 1, 1902—Decided March 2, 1903.

1. When, under a building contract, the contractor has been prevented
   from completing his work by the fault of the owner, the legal
   measure of damages is, generally, for the work done, such a pro-
   portion of the entire price as the fair cost of that work bears to
   the fair cost of the whole work, and in respect to the work not
   done, such profits as he would have realized by doing it.

2. Evidence as to the cost of the entire work is necessary in order
   to ascertain what proportion of the whole work contracted for
   has been done.

3. The defendant will be entitled to show that the contractor has
   not done his work in compliance with the contract, and to claim
   such rebate as will satisfy the loss to him by reason of such non-
   compliance.

4. The contract provided, "that if the architect shall certify that
   the refusal, neglect or failure of the contractor to comply with
   the contract is sufficient ground for such action, the owner may
   terminate the employment of the contractor." The architect oc-
   cupied a judicial position as to the parties, and was bound to act
   impartially upon his own judgment, and to express in some ap-
   propriate language, in writing, his opinion that there was sufficient
   ground to take the work out of the contractor's hands.

5. A private letter written by the architect to the owner and not
   communicated to the contractor, will not justify a rescission by
   the owner.

On error.

For the plaintiff in error, *John S. Applegate & Son.*

For the defendant in error, *James E. Degnan.*

The opinion of the court was delivered by

VAN SYCKEL, J. This is a suit on a building contract, by
contractor against owner, to recover for work done under the
contract, dated April 23d, 1901.

The plaintiff alleged that the owner unlawfully rescinded
the contract, and he was permitted by the trial court to recover
the cost of the work he had done and materials furnished. ·

The first question in the case is whether the owner was justified in putting an end to the contract.

Section 13 of the contract provides: "That if the architect shall certify that the refusal, neglect or failure of the contractor to comply with the contract is sufficient ground for such action, the owner may terminate the employment of the contractor."

On the 27th of August, 1901, the architects sent to Borden a letter, of which the following is a copy:

"August 27, 1901.

*"Dear Mr. Borden:*

"We have your favor of the 26th inst., in relation to the progress of work on the Bleiman Cottage.

"We feel as you do about this matter, that the present progress is absolutely unsatisfactory, and that under existing conditions it is utterly impossible to prophesy the date of completion. We have urged the contractor on every possible occasion and have instructed him in many ways that with an ordinary contractor would be quite unnecessary, but he exhibits so little capacity for carrying on the work that we are quite discouraged about it, and we are therefore very willing to take any action in the matter which you may suggest.

"The present stage of the work is perhaps the most unsatisfactory of all, as the plastering work which is now being carried on prevents the progress of the woodwork on the interior, and this of course cannot be avoided.

"If you deem it advisable, we will forward to the contractor the formal notice to discontinue work which you have already sent to us for the purpose. We have no means of inducing the contractor to put more energy into the work, nor can we supply his deficiency in this particular. We have exhausted every resource in our efforts to have him hurry the work.

"We await your instructions in the matter.

"Yours truly,

"CAVERE & HASTINGS."

After receiving this letter the defendant, on the 7th of September, 1901, caused the notice referred to in the letter of the architects to be served on the plaintiff, having first changed its date to September 7th, 1901. The said notice was as follows:

*"Wayman Wilson, Esq.:*

"SIR—In accordance with the terms of section 13 of my contract with you for work on the house formerly owned by Max Bleiman, of Oceanic, N. J., I hereby give you notice that your failure to proceed with the work compels me to avail myself of my privilege under said contract to have the work finished by some other person.

"M. C. D. BORDEN.

"OCEANIC, 7th Sept. 1901."

An implication may be drawn from the letter of the architects that, in their judgment, the owner had a right to rescind, but the contractor should not be deprived of his contract by implication, when there is an express provision in the contract that the architect must certify that there is sufficient ground for rescission.

It is not necessary that the word "certify" shall be used, or that any formal language shall be employed by the architects, but they must express, in some appropriate language, in writing, their opinion that there is sufficient ground for the owner to take the work out of the contractor's hands. There is an absence of such language.

The architects occupied a judicial position as to these parties; they had no right to favor either, but were under a duty to act impartially between them.

Their statement in the letter of August 27th that they were willing to take any action which the owner might suggest, and that they would forward the notice to rescind, if the owner so desired, does not show a correct judicial disposition, and from it the inference may be drawn that the architects had not fully made up their minds whether they should certify, but would be governed by the wish of the owner.

That was not a compliance with the requirement to certify their own judgment as arbiters between the parties.

Besides the infirmity in this respect, the letter written by the architects to Borden, the owner, even if in form a certificate, could not justify the termination of the contract, because it was a private letter, written to the owner, and not served upon, nor its contents communicated to, the contractor whose rights under the contract were to be affected. All the information the contractor had was that the owner wished to rescind the contract.

The trial judge therefore properly instructed the jury that the contract was not lawfully rescinded by the owner.

The jury was thereupon directed to find a verdict for the plaintiff for the sum of $3,266.79, with interest from September 11th, 1901, the amount testified to by the plaintiff as the cost of the work done and materials furnished by him.

In this instruction to the jury an erroneous rule for computing the amount due to the plaintiff was adopted.

In *Kehoe* v. *Rutherford, 27 Vroom 23,* Mr. Justice Dixon formulated the correct rule as follows:

"When the plaintiff has been prevented from completing his work by the fault of the owner, the legal measure of damages is generally for the work done such a proportion of the entire price as the fair cost of that work bears to the fair cost of the whole work, and in respect to the work not done such profits as he would have realized by doing it."

If the plaintiff had completed one-quarter of the whole work contracted for, he would have been entitled to one-quarter of the contract price; if he had completed one-half, to one-half of the contract price.

To ascertain what portion of the work the plaintiff had done it was necessary to ascertain what the cost of the entire work would have been. The plaintiff had proved the cost of the work done, and the defendant offered to prove what it would cost to finish the contract work.

This offer was erroneously overruled.

If the plaintiff had done work which cost one-half of the cost of the entire work, he would have been entitled to one-half of the contract price for that work.

It is proper, however, to observe that the defendant would have a right to set up and show that the plaintiff had not done his work in compliance with the contract, and to claim such rebate as would satisfy the loss by reason of non-compliance.

The judgment below should be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, GARRETSON, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM.   12.