GENERAL BONDING & CASUALTY INS. CO. v. McCURDY.    (No. 5567.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 2, 1916. On Motion for Rehearing, March 8, 1916.)

1. EXCEPTIONS, BILL OF ☞40—FILING—EXTENSION OF TIME.

An order extending time to file bills of exceptions may be made after the time for filing previously given has expired, whether the court be one whose terms are more or less than 8 weeks.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. §§ 44, 45, 57–64; Dec. Dig. ☞40.]

2. WITNESSES ☞143 — COMPETENCY—TRANSACTION WITH DECEDENT — ASSIGNOR OF CLAIM.

The assignor of a claim, on which an executrix is sued, is, under Rev. St. 1911, art. 3690, prohibiting either party to testify against the other to a transaction with decedent, incompetent to testify for the assignee, as he would be to testify for himself, if suing on the claim.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 619–624; Dec. Dig. ☞143.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. MECHANICS' LIENS ⬤271—ENFORCEMENT —PETITION.**

Petitions seeking to establish liability by reason of mechanics' liens, are subject to general demurrer, they not alleging the date of giving notice of claims, nor the amount of the contract price unpaid to the contractor at the time of the notice, or the amounts thereafter paid to him.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 494–513; Dec. Dig. ⬤271.]

**4. APPEAL AND ERROR ⬤501—OVERRULING GENERAL DEMURRER—EXCEPTIONS.**

Whether a petition is subject to general demurrer is a question of fundamental error, so that it is immaterial that exceptions to the overruling of such demurrer do not appear in the transcript.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2300–2305; Dec. Dig. ⬤501.]

**5. FRAUDS, STATUTE OF ⬤143—PERSONS TO WHOM STATUTE IS AVAILABLE.**

The defense of statute of frauds being a personal one, and not being pleaded by plaintiff against interveners, cannot be invoked in favor of plaintiff against them by a defendant who was not a party to the contract between plaintiff and interveners.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 344–350; Dec. Dig. ⬤143.]

**6. PRINCIPAL AND SURETY ⬤82—LIABILITY —EXTENT—BUILDING CONTRACT.**

The owner of a building cannot on default of the contractor make promises to pay claims due by the contractor, thus enlarging his liability, or make contracts for labor and material, and hold the contractor's bondsman liable therefor, except as provided by the building contract or bond.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 127; Dec. Dig. ⬤82.]

On Motion for Rehearing.

**7. APPEAL AND ERROR ⬤854—REVIEW—REASONS FOR DECISION.**

A judgment being correct, though for a different reason than stated by the court, should be affirmed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3403, 3404, 3408–3424, 3427–3430; Dec. Dig. ⬤854.]

**8. PRINCIPAL AND AGENT ⬤157—AGENT OF TWO PARTIES—CONTRACT.**

One who is agent both of a building contractor and the building owner, cannot by approving of, as agent of the contractor, a contract which, as agent of the owner, he made with laborers and materialmen, deprive the contractor of any right, as one cannot contract with himself.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 588; Dec. Dig. ⬤157.]

**9. PRINCIPAL AND SURETY ⬤101—RELEASE OF SURETY—ALTERATION OF CONTRACT.**

A material alteration of the contract by building contractor and building owner will release the contractor's bondsman.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 169–180; Dec. Dig. ⬤101.]

Appeal from District Court, Bee County; F. G. Chambliss, Judge.

Action by Elizabeth McCurdy, executrix of W. O. McCurdy, deceased, against the General Bonding & Casualty Insurance Company and another. From the judgment against the named defendant, it appeals, and plaintiff complains of judgments in favor of interveners. Reversed in part.

Beasley & Beasley and J. Ed Daugherty, all of Beeville, for appellant. Dougherty & Dougherty, B. D. Tarlton, Jr., H. S. Bonham, W. G. Gayle and G. C. Robinson, all of Beeville, for appellee.

MOURSUND, J. On January 27, 1913, W. O. McCurdy and L. W. Franks entered into a building contract, whereby Franks agreed to provide all the materials and perform all work, and deliver the building completed, free of all liens, by June 1, 1913, for $10,445.-35, to be paid in installments upon certificates of the architects, Stephenson & Heldenfels, but 20 per cent. to be retained until completion of the building and paid within 10 days thereafter. Franks executed a bond guaranteeing the faithful performance of his contract, with the General Bonding & Casualty Insurance Company as surety. McCurdy died on June 19, 1913, and his widow, who was the sole devisee under his will, qualified as independent executrix in July, 1913.

The building was completed and accepted by Mrs. McCurdy on September 1, 1913, at which time the sum of $2,081.15 remained unpaid to Franks. Some time after August 20th F. W. Heldenfels, the architect, who personally supervised the construction of the building, in order to make up a statement of the final condition of the job, and to arrive at what Franks owed on the building for material and labor, went around and talked to each of Franks' creditors personally and got "a statement of what they had against the building." In this way it was ascertained that Franks owed more than the portion of the contract price on hand would satisfy. On September 5, 1913, the attorneys for the estate of McCurdy telegraphed the General Bonding & Casualty Insurance Company that they had just been informed by Heldenfels, architect for the McCurdy building, that there was $2,081.15 due to Franks, and $3,876.26 in claims due by Franks, making a difference of $1,795.11 which might become a lien on the building, and for the company to give this immediate attention. A reply was telegraphed on the same day as follows: "Architects certainly know the usual custom of prorating funds left on hand." Acting upon this reply, Heldenfels, on September 9th, prorated the $2,081.15 among various creditors of Franks (all of whom, save probably one, were interveners in this suit) paying each approximately 53¾ per cent. of his debt, and he informed the creditors if they would file liens for the balance of their claims the McCurdy estate would pay them. Most of the creditors filed statements with the county clerk,

seeking to fix a mechanic's or materialman's lien under the statute.

The claims against Franks after the completion of the building and held by interveners in this suit, briefly, were as follows:

| | | |
|---|---:|---:|
| (1) Heldenfels Bros., lumber and other material, prosecuted by J. C. Wood, assignee of Heldenfels Bros. | $1,139 | 33 |
| (2) Beeville Windmill & Plumbing Co. material | 132 | 23 |
| (3) Noble and Woodruff, hauling | 223 | 96 |
| (4) C. E. French, bricklaying | 53 | 81 |
| (5) a. Francis Michot, labor and material ...... $14 21 | | |
|  b. Burrows Hardware Company, material 23 22 | | |
|  c. S. I. De Loach, plasterer ............ 18 69 | 56 | 12 |
| (6) Homer Botts and 14 others, day laborers, claims totaling | 105 | 26 |
| Total | $1,709 | 71 |

Each one of the claims represented a balance due after the payment of its pro rata part of the fund of $2,081.15 on September 9th.

Some time after the completion of the building Mrs. McCurdy instituted this suit against Franks and the Bonding Company, alleging that certain of the claimants had filed liens against the property which constituted a cloud on her title, and that others had valid claims that were liens or could be converted into liens, and that she and her deceased husband, as well as their agents and representatives, had faithfully complied with all the obligations imposed upon them in the building contract, and that the entire contract price had been paid. She alleged the facts as to the delay and prayed that the validity of all claims and liens be determined, and that she have judgment for the amount of all such claims and liens as were valid and resulted from the contractor's fault, and that she recover $105 liquidated damage for delay in completion of the building.

Intervener C. E. French sued for $53.81, balance due him for work as a brick mason. His account was filed September 11, 1913. He alleged that within 90 days after accrual of the indebtedness he gave notice to Franks and plaintiff of the amounts and items of the indebtedness. He also alleged that he had a lien as admitted in plaintiff's original petition, and that he had a lien, even though the cost exceeded the contract price, because the owner permitted him to continue his work knowing that Franks was insolvent, and that the cost would exceed the contract price. He also alleged that he was promised by the agents of the owner that his account for labor performed and to be performed would be paid; that he would not have performed said labor if it had not been for such promise.

Interveners Noble & Woodruff sued for a balance of $223.96 for hauling material and leveling dirt. Their allegations are the same as those of French.

Francis Michot sued for a balance of $14.21 for material, Burrows Hardware Company, for $23.22, for material, and S. I. De Loach for $18.69, for labor. The first two alleged that they had given notice to Franks and plaintiff of the amounts and items of their claims within 90 days of the accrual thereof, and that each of them filed with the county clerk a verified account within said time. De Loach's allegation of notice and filing of account was the same as that of the other two, except that he alleged he gave notice and filed his account within 30 days after the accrual of the indebtedness. They all alleged estoppel along the lines pleaded by intervener French, as well as that the owner, by her agent, F. W. Heldenfels, expressly promised to pay their claims.

Interveners Homer Botts, J. L. Slusser, Clarence Boss, John Davis, J. W. Nolan, E. J. Canada, J. E. Click, Pete Ahasoy, M. Fernandez, Don Sauseda, Dan Tally, Oscar Bennett, E. J. Book, and F. Baldwin sued to recover small amounts due them for labor, and the Beeville Manufacturing Company, $3.93, for supplies furnished. They sued upon an express agreement by the owner to pay their claims, and also alleged estoppel by reason of the same facts pleaded by the other interveners.

The Beeville Windmill & Plumbing Company sued for $132.23, for material. Its petition contained the same allegations as that of French, with the exception that no promise on the part of the owner is relied on.

J. C. Wood, as assignee of Heldenfels Bros., sued to recover a balance of $1,139.33 due for material furnished, alleging the same facts as intervener French for the purpose of showing a lien by estoppel, and also that W. O. McCurdy promised and agreed with F. W. Heldenfels that he would pay for such material as said firm would furnish Franks for use in the construction of the building to be erected by said McCurdy. This intervener also alleged notice in the same general way as intervener French.

Plaintiff's answer to each of such petitions of intervention consisted of general demurrer, special exceptions, denial of every material allegation, and a special reply to the effect that the division of the balance on hand was made by agreement between the owner and all holders of unpaid claims, and that French was a party to such agreement, accepted his part, and is therefore estopped from setting up any further claim against plaintiff. She alleged further that she had paid the full contract price for the building, that she had complied faithfully with all the obligations of the building contract, and prayed that if any judgment was rendered against her for any amount that she have judgment against Franks and the Bonding Company for such amounts and for the sum of $105 for delay. She asserted:

"(a) That if she had made herself liable in any way on account of the manner in which she dis-

bursed the fund of $2,081.15, then the Bonding Company should reimburse her because she was acting under its instructions and direction in so doing, and (b) that if she had become liable for any of the claims arising out of the construction of the building, such liability resulted from the default of the contractor, Franks, by reason of his breach of the contract in failing to 'furnish and pay' for all the labor and material entering into the construction of the building; it being contended that such was the effect of his contract."

The Bonding Company, while it denied liability to plaintiff, even though plaintiff should be liable to interveners, actively defended plaintiff against interveners. It contended that under the facts, in so far as it was concerned, plaintiff's liability was limited to the contract price of the building; that Franks had performed his contract by furnishing her such a building as she contracted for; that if she had become liable for any additional amount such liability arose out of agreements foreign to the contract with Franks; that the promises made to the claim holders were unenforceable under the statute of frauds; that authority of Heldenfels to bind the McCurdy estate by promising to pay the claims was not shown; that plaintiff had failed to faithfully perform the contract resulting in the release of the surety; and that F. W. Heldenfels was in effect a party to the suit, and incompetent to testify as to the statements of W. O. McCurdy, deceased.

No jury was demanded. Judgment was rendered in favor of each intervener for the amount of his claim against plaintiff, and in favor of plaintiff for all such sums and $105 additional damages for delay, against Franks, who did not answer, and the Bonding Company. The plaintiff and the Bonding Company perfected appeal.

[1] At a former day of this term a motion by Mrs. McCurdy to strike out the bills of exception of the Bonding Company was overruled. The ground of the motion was that while orders extending the time within which to file bills of exception and statement of facts had been granted, such orders were made after the time had expired, which had theretofore been given. The motion was overruled upon the authority of the case of Hamill v. Samuels, 104 Tex. 46, 133 S. W. 419, in which the Supreme Court held that an order entered at the following term of court was sufficient, although the time theretofore given by the statute had expired long before such order was entered. That was a case decided in a court whose term may last more than 8 weeks; but if the power given to extend the time may be exercised in such cases after the time given by law or previously granted has expired, the same construction must be placed upon the same words in that portion of the statute relating to cases tried in courts whose term is less than 8 weeks, and in which the extensions may be granted in vacation. Nocona Bank v. Bolton, 143 S. W. 242.

[2] The court concluded that W. O. McCurdy was liable to Heldenfels Bros. for the balance due them by reason of an express agreement to pay for all the material furnished by Heldenfels Bros. to Franks, and therefore J. C. Wood, assignee, should recover from plaintiff the amount for which he sued; that when plaintiff paid $1,314.87 to Heldenfels Bros. on September 9, 1913, she paid a debt for which she was primarily liable as between herself and Heldenfels Bros., and therefore she became liable to the other interveners for the amounts awarded them in the judgment, by reason of having written notice of their claims and. of the fact that they should have been paid before any payment was made to Heldenfels Bros. As the judgment of the court is based on the theory that Heldenfels Bros. were entitled to recover on a promise alleged to have been made by W. O. McCurdy, we will first consider the assignment which challenges the correctness of the ruling of the court in admitting and considering the testimony upon which such holding is based. F. W. Heldenfels, who, in addition to being the supervising architect, also acted in the capacity of agent for the owner, was a member of the firm of Heldenfels Bros., which firm assigned to J. C. Wood its claim after this suit was instituted by plaintiff. Upon his testimony concerning an agreement made with W. O. McCurdy before the material was furnished to Franks, and upon such testimony alone, is based the finding of the court that a contract was made by McCurdy to purchase such material. This testimony was objected to as coming within the purview of article 3690, R. S. 1911. Intervener Wood, as assignee of Heldenfels Bros., sought to recover a judgment against Elizabeth McCurdy, as executrix of the will of W. O. McCurdy. We find no case directly in point, but believe that if the statute is to be given effect it must be held that F. W. Heldenfels' testimony should not have been admitted. If every person who claims to have a contract with a deceased person can, by assigning his claim, free himself of the inhibition of the statute against testifying to transactions with the deceased, the statute, for all practical purposes, would be rendered nugatory, and might as well be abolished. It may well be doubted whether the statute is a good one, but, as long as it remains the law, the courts, while not extending it, will give it a practical construction such as will effect the purpose thereof. In the case of Simpson v. Brotherton, 62 Tex. 170, the Supreme Court said:

"So the object of the act, excluding parties from testifying as to transactions with deceased persons, would be defeated by allowing one to testify to such transactions who was as fully interested in the result of the suit as any of the persons named as parties upon the record."

Intervener Wood had made Heldenfels Bros. parties to this suit, alleging that they represented to him, in order to get him to

buy their claim, that it was secured by a lien upon the building, and praying for judgment against them in the event it should appear that the claim was not secured by a lien as claimed. It is true that the Bonding Company in its pleadings suggested that Heldenfels Bros. were improperly brought into the suit because they did not occupy the position of plaintiff or defendant, but only that of defendant in an independent suit by Wood, and prayed that the suit be dismissed as to said Heldenfels Bros. It appears that Heldenfels Bros. filed a motion asking that they be dismissed from this suit, which motion was granted, and they were dismissed without prejudice to Wood's claim. The order of court shows that the dismissal was not granted because of any request of the Bonding Company, but even if it had been, such fact would not deprive plaintiff or the Bonding Company of the right to object to the improper testimony. In support of our conclusion that the testimony should have been excluded, we cite in addition to the case above mentioned, the following cases: Anglin v. Barlow, 45 S. W. 828; Whitfield v. Diffie, 105 S. W. 326; Wells v. Hobbs, 57 Tex. Civ. App. 375, 122 S. W. 452; Duncan v. Herder, 57 Tex. Civ. App. 542, 122 S. W. 905.

As the court erred in holding that the claim of Heldenfels Bros. held by intervener Wood arose from a contract on the part of McCurdy to purchase from said firm such material as Franks had intended purchasing from such firm, it follows that the conclusion to the effect that said claim was not entitled to share in the distribution of the balance on hand must be declared erroneous, as well as the further conclusion that the remaining interveners were entitled to recover the amounts sued for by them because of the diversion of a large portion of the fund to the payment of the Heldenfels claim. It further appears that only the interveners Francis Michot, Burrows Hardware Company, and S. I. De Loach attempted to plead illegal distribution of the funds, and they fail to allege any facts showing that the distribution was illegal, but merely aver that part of the fund was paid to parties "who were not looking to this fund for payment, but were relying on W. O. McCurdy's expressed promise to pay them."

[3, 4] The petitions contain general allegations of the giving of notice to the owner and contractor of their claims, but the date of such notice is not alleged, nor is there any averment as to the amount of the contract price unpaid to the contractor at the time of the notice, or of amounts thereafter paid to the contractor. Such petitions, in so far as they sought to establish liability by reason of liens under the mechanic's lien statutes, were all subject to general demurrer. Tenison v. Hagendorn, 155 S. W. 690, and cases therein cited. The same may be said of the petition of intervener Wood. Whether a petition is subject to general demurrer is a question of

fundamental error, and it is immaterial that exceptions to the overruling of such demurrer do not appear in the transcript. City of San Antonio v. Bodeman, 163 S. W. 1044, and cases therein cited.

[5] The only question left to be considered with regard to interveners' claims against plaintiff arises upon the allegations and the findings of the court with respect to verbal promises made by F. W. Heldenfels, as agent of the owner, to pay the claims of certain of the interveners. The Bonding Company interposed against these promises the statute of frauds, and contends that some of the claims are entirely those of Franks, as to which claims the promise was merely one to answer for debt of another, and that others are partially debts of Franks, and the evidence fails to disclose to what extent the claims cover original undertakings on the part of the McCurdy estate, and therefore no recovery can be sustained as to such claims upon the verbal promises. These contentions are undoubtedly sound, provided the Bonding Company has the right to invoke the statute of frauds in behalf of plaintiff. Plaintiff did not plead the statute of frauds, and we think that in view of the fact that such defense is a personal one, the Bonding Company, which was not a party to the contract, cannot invoke the statute in behalf of plaintiff. If the contracts made in behalf of the McCurdy estate would have been binding as between plaintiff and the Bonding Company, if made in writing, they are equally binding upon the Bonding Company when made by parol. We therefore conclude that the judgment rendered in behalf of interveners C. E. French, Noble & Woodruff, Francis Michot, Burrows Hardware Company, S. I. De Loach and Homer Botts et al. should be affirmed as against plaintiff. The Beeville Windmill & Plumbing Company did not rely upon any promise to pay its claim made by or in behalf of plaintiff, and its judgment against plaintiff must be reversed. The judgment of J. C. Wood cannot be sustained upon any theory pleaded by him, as has hereinbefore been pointed out.

[6] We come then to the questions relating to the claim of plaintiff against the Bonding Company for all sums which plaintiff may be adjudged to pay interveners. It is, we think, clear that W. O. McCurdy, and his executrix, could not make original contracts for work or material, thus giving those furnishing the same a lien under the Constitution, unless they were authorized to do so by the terms of the contract between McCurdy and Franks or the bond itself. The contract provided that if the contractor should at any time refuse or neglect to supply a sufficiency of workmen or materials, such refusal or neglect or failure being certified by the architects, the owner should be at liberty, after 10 days' written notice to the contractor, to provide such labor and materials, and to deduct the cost thereof from any money then

due or thereafter to become due the contractor under the contract; and if the architects shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall be at liberty to terminate the employment of the contractor and to complete the work, etc. It also provides that:

"If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises might become liable, and which is chargeable to the contractor, then the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default."

The bond provides that it is issued subject to the following express conditions, which shall be conditions precedent to the right of the owner to recover hereunder:

"(1) That the owner shall keep, do, and perform each and every, all and singular, the matters and things set forth and specified in said contract to be by the owner kept, done, and performed exclusively at the time and in the manner as in said contract specified.

"(2) That the surety shall be notified by telegram sent to it at its home office in the city of Dallas, Tex., of any breach of said contract by the principal, or of any act on the part of the principal, or his agent or employés, which may involve a loss for which the surety may be held liable hereunder, immediately after the occurrence of such breach or act shall have come to the knowledge of the owner, or of his duly appointed representative or representatives having supervision of the completion of said contract.

"(3) That if the principal shall voluntarily abandon said contract, or be lawfully compelled by the owner to cease operations thereunder by reason of the nonperformance by the principal of any of the terms or conditions of said contract, then the surety shall have the right, in its option, to assume the said contract and to sublet or complete the same; and, if said contract shall be assumed by the surety, then, as such contract is duly performed, any reserve, deferred payments, and all other moneys provided by said contract to be paid to the principal shall be paid to the surety at the same time and under the same conditions as by the terms thereof such moneys would have been paid to the principal, had the contract been fully performed by him. And if the owner shall complete or relet the said contract, then any forfeiture provided in said contract against the principal shall not be operative as against the surety, but all reserves, deferred payments, and all other moneys provided in said contract which would have been paid to the principal, had the principal completed said contract in accordance with its terms, shall be credited upon any claims the owner may make upon the surety."

It appears that Noble & Woodruff, C. E. French, De Loach, Homer Botts, and the other laborers who intervened herein quit work on the building in August before the completion of same, and refused to do any further work, unless they received assurances they would be paid, and F. W. Heldenfels, in behalf of the owner, promised each of them that the owner would pay all past due indebtedness as well as that to accrue in the future, if they would return to work, and they re-

183 S.W.—51

turned and completed the work. It appears that they even locked up the building. No notice of all this was given to Franks or the Bonding Company. We cannot understand upon what theory the owner can make promises to pay claims due by the contractor, thus enlarging his liability, and expect the surety company to be responsible for such judgments as may be obtained upon such promises. It may be said that had the owner failed to make such promises, the claimants would have probably given statutory notice of their claims, and then refused to do any further work, in which event if Franks had been unable to employ others, plaintiff could have done so, and held the Bonding Company for such additional expense. Such reasoning, though plausible, is fallacious, for if the owner could be thus justified in incurring liability, a surety company's responsibility for all sums could be fixed by the owner by promising to pay the claims. It is clear that the contract gives no such right to the owner. He has no right to make the claims against the contractor fixed and certain charges against himself by promising to pay same, but must adhere to his contract under which he is only responsible for claims which actually become liens under the law. It is true that he is given the right to incur obligations for which he can hold the Bonding Company, namely, obligations for labor and material necessary to finish the building. But here, again, certain conditions defined in the contract must justify such summary proceeding, and the owner must comply with certain conditions. In this case the owner undertook to contract for material and labor to finish the house without complying with the provisions of the contract. If conditions were sufficiently bad to justify Mrs. McCurdy, through the ever present Heldenfels, in taking matters into her own hands, the Bonding Company was entitled to notice under clause No. 2 of the bond, hereinbefore copied. We conclude that not only can the Bonding Company not be held responsible for the judgments obtained against plaintiff, all of which were obtained upon her promises, but that through her agent, Heldenfels, she has violated the conditions of the contract and bond, and the Bonding Company is therefore released from liability thereon.

The judgment in so far as it awards any sums in favor of plaintiff against the Bonding Company is reversed, and judgment rendered, that plaintiff take nothing by her suit against said company. Those portions of the judgment whereby J. C. Wood and the Beeville Windmill & Plumbing Company are awarded sums against plaintiff are reversed, and the cause as to them remanded. The judgments in favor of E. C. Noble and E. Woodruff, C. E. French, Homer Botts, Dan Talley, J. L. Slusser, Clarence Bass, Oscar Bennett, S. I. De Loach, F. Baldwin, Jno.

Davis, E. J. Canada, Pete Ahasoy, Don Sauseda, M. Fernandez, J. W. Nolan, Francis Michot, J. E. Click, Beeville Manufacturing Company, Burrows Hardware Company, and E. J. Book against plaintiff will be affirmed. The judgment will not be disturbed in other respects. The costs of this appeal will be taxed against Mrs. McCurdy.

### On Motion for Rehearing.

Mrs. McCurdy, in her motion for rehearing, complains of the hardship worked upon her by reason of our holding that she should have pleaded the statute of frauds. She had every opportunity in the trial court of making such plea, but as it was apparently her purpose to make the Bonding Company pay for the verbal promises made by her through Heldenfels, she refrained from pleading such statute. She did not offer to let the Bonding Company fight her case against the interveners, and thus give the company, which she proposed to hold liable for such judgments as might be rendered against her, an opportunity to prepare the pleadings in her behalf and conduct the case as it saw fit. On the contrary, she elected to make her own defenses, and, as stated in our former opinion, so far as a defense which is merely a personal privilege is concerned, we do not think the Bonding Company had the legal right to demand that it be pleaded. We therefore took the view that the Bonding Company's contentions with respect to the statute of frauds would have to be overruled. Mrs. McCurdy elected to stand or fall by the assignments of error presented by the Bonding Company, and is in no position to complain. The contention is made that the case should be reversed as to all interveners so she would have an opportunity to amend her pleadings and urge the statute of frauds.

[7] If the judgment of the court is correct, although for a different reason than the one stated by the court, it should be affirmed. If the judgment is incorrect, it should be reversed and the cause remanded, except in the exceptional cases in which a rendition is authorized.

[8, 9] Much is said in the motion about Heldenfels being the agent of Franks in making the promise that the McCurdy estate would pay, not only future wages and claims, but also those already accrued. The trial court, as is shown by paragraph 15 of his findings of facts, found that Heldenfels was appointed agent by McCurdy in all matters relating to the construction of the building, and that he continued to act as such agent under authority from Mrs. McCurdy after McCurdy's death. This finding is supported by the evidence, and was not excepted to by Mrs. McCurdy. The court found, as shown by paragraphs 17 and 18 of his findings of fact, that Heldenfels promised the interveners whose judgments were permitted to stand that plaintiff would pay their claims then accrued and to accrue. He made this promise as agent of Mrs. McCurdy, of course. It is doubtless true that in his capacity as agent of Franks for certain purposes, if he was such agent, he highly approved of the contract which he made with said interveners as agent of Mrs. McCurdy. But, as he could not contract with himself, such approval could not deprive Franks of any rights, much less the Bonding Company, which had the right to insist that Mrs. McCurdy and Franks should not change the contract. While the record fails to show that Franks invested Heldenfels with any power to change the contract, if Heldenfels instead of doing an act in behalf of the owner not authorized by the contract, in his double capacity could have changed the contract so as to authorize the owner to fix his claim against the contractor by simply promising to pay all debts regardless of whether they became liens or not, then the Bonding Company would be released by such material change in the contract.

It is also contended that the promises upon which this court permitted certain of the judgments to stand were conditional, in that Heldenfels only promised to pay, provided liens were filed. We had reference to the promises made before the house was completed, which were not conditional and were pleaded and fully established by Heldenfels' testimony. The conditional promises referred to in the motion for rehearing related to the balances due after apportioning the fund. When all the testimony of Heldenfels is considered, it is apparent that he testified he made unconditional promises about August 17th, which were based upon his authority from Mrs. McCurdy, hereinbefore mentioned. And the trial court so found, as is fully set out in the seventeenth and eighteenth findings of fact, to which Mrs. McCurdy filed no exception. It is true that when the fund on hand was distributed in September, Heldenfels made conditional promises to pay the balance due, which promises were authorized to be made by the attorney for the McCurdy estate, but these promises were ignored by the trial court and this court.

The motion for rehearing is overruled.