TEXAS FIDELITY & BONDING CO. v. ROSENBERG INDEPENDENT SCHOOL DIST. et al. (No. 7378.)

(Court of Civil Appeals of Texas. Galveston. April 25, 1917. Rehearing Denied May 17, 1917.)

1. SCHOOLS AND SCHOOL DISTRICTS ⊜=81(2) —BUILDINGS—CONTRACTOR'S SURETY—LIABILITY.

In action on the bond of a contractor for a school building, payments made in good faith by the school district on the architect's certificates, as required by the contract, are conclusive.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 195, 196.]

2. SCHOOLS AND SCHOOL DISTRICTS ⊜=81(2) —BUILDINGS — CONTRACTS — SURETY'S LIABILITY—CONSTRUCTION OF CONTRACT.

The rule that the parties' intent is the dominant test in construing a contract applies to the surety's bond of a contractor for school buildings.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 195, 196.]

3. SCHOOLS AND SCHOOL DISTRICTS ⊜=81(2) —BUILDINGS — CONTRACTS—SURETY'S LIABILITY—CONSTRUCTION OF CONTRACT.

A school building contractor's bond broadly binding the surety to carry out the contract's design, true spirit, etc., within the time mentioned, will not be strictly construed in the surety's favor.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 195, 196.]

4. SCHOOLS AND SCHOOL DISTRICTS ⊜=81(2) — BUILDINGS — CONTRACTS — DISCHARGE OF SURETY.

A school building contractor's default made inoperative the contract provisions providing for payment upon the architect's certificates, the retention of certain amounts for paying materialmen's claims, and requiring the contractor be given written notice of default before the owner supplied materials, etc., so far as the liability of the contractor's surety is concern-

ed, especially where the surety's bond was for the express benefit of materialmen.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 195, 196.]

5. SCHOOLS AND SCHOOL DISTRICTS ⊜=81(2) — BUILDING CONTRACTS — LIABILITY OF SURETY.

Under a building contract providing that the contractor should forfeit a certain amount daily for delay in completing the work, the surety is liable for such sum, especially where the entire delay resulted from the contractor's fault before he abandoned the work.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 195, 196.]

Appeal from District Court, Fort Bend County; Sam'l J. Styles, Judge.

Action by the Rosenberg Independent School District against the Texas Fidelity & Bonding Company and others, in which H. W. Greenway intervened. From adverse judgments, the named defendant appeals. Affirmed.

Cooper & Merrill, of Houston, for appellant. F. X. Joerger, of Rosenberg, and Huggins & Kayser and Bryan & Bryan, all of Houston, for appellees.

GRAVES, J. Appellees, as trustees of Rosenberg independent school district, sued appellant bonding company, making the contractors, Shapley & Son, and their trustee in bankruptcy, parties, seeking to recover from the bonding company, as surety on the contract bond of the contractors, certain damages alleged to have accrued to the school district by reason of their failure to perform the conditions of a contract, by which they undertook to construct for the school district a certain school building at the town of Rosenberg. The contract alleged was in writing, and stipulated for the completion of the school building by October 1, 1913, and provided for a penalty of $10 per day for each and every day thereafter required to complete the same. The school district alleged that the contractors continued the work on the building until January 6, 1914, at which time, being unable to continue for lack of means, and having become insolvent, they abandoned the work, without any fault on the part of the school district, and delivered possession of the incompleted building to it; that the district took charge of the building on that date, for the purpose of completing the same according to the contract, but that it was not in fact completed until June 1, 1914, 240 days after the date fixed by the contract, and sought to recover from the bonding company, as such surety, the sum of $10 per day on account of the delay. The school district also sought to recover reasonable attorney's fee, alleged to be the sum of $240, and the further sum of $416.40 on account of insurance premiums claimed to have been paid for the contractors; also, other items of expense charged to have been incurred by the district in making certain re-

pairs and alterations to the building as constructed. H. W. Greenway intervened, and likewise sought to recover from the bonding company a balance of $978, alleged to be due him from Shapley & Son on subcontract for certain plumbing work done by the intervener for the contractors on the building. The liability of the bonding company as to this intervention is based upon several clauses of the bond, which provide that the same is intended for the benefit of persons who may furnish labor and material on the contract, and may be sued upon by them, as is hereinafter referred to. A trial of the cause without a jury resulted in a judgment in favor of the school district against the bonding company for the sum of $2,594.36, and in favor of the intervener against the bonding company for $978, both with interest, and in favor of Shapley & Son on their plea of discharge in bankruptcy. Such further statement of the case as is deemed necessary will be made in what follows. The bonding company's appeal from this judgment was duly perfected and is now properly before this court for review.

A brief summary of the main provisions of both the contract and bond is the following:

(1) The bond was expressly made payable to, and for the use and benefit of, both the school district and all persons who might furnish labor and material under the terms of the contract, and of the assigns of such payees, and might be sued upon by any one of these beneficiaries as if executed to them in proper person.

(2) It further provided that:

If the contractors "shall in all things stand to and abide by and well and truly keep and perform the covenants, conditions and agreements in the contract entered into by and between the said J. M. Shapley & Son and the said Rosenberg independent school district, being date May 1, 1913, for the construction of the school building, and the performance of the work on lots in Rosenberg, Tex., as mentioned in the foregoing contract, and shall duly and promptly pay and discharge all indebtedness or liability that may be incurred by the said J. M. Shapley & Son and in carrying out said contract, and completing the same free from any mechanic's lien, and shall truly keep and perform the covenants, conditions and agreements as stipulated and mentioned and provided in the within and foregoing contract, and which are to be kept and performed at the time and in the manner and form therein specified, as well as all costs including attorney's fees, in enforcing the payment and collection of any and all indebtedness incurred by the said J. M. Shapley & Son and in carrying out the terms of said contract, and when so carried out then the above obligation to become null and void, otherwise to remain in full force and effect."

The contract recited that the bond was attached to and made a part of it, and further provided:

"* * * In consideration of the first party's completely and faithfully executing the aforesaid work, and furnishing all the materials therefor, so as fully to carry out this contract, and the design, according to its true spirit, meaning and intent by and at the time mentioned, and to the full and complete satisfaction of the said M. L. Waller, architect, and his superintendent, does hereby agree to pay, * * * on certificates of the superintendent from time to time as the work progresses, to wit: Eighty per cent. (80%) of the estimated value of the same, subject to conditions and reductions as hereinafter provided, estimates to be made by the architect or the superintendent. * * * Twenty per cent. of the contract price shall be held by the second party as security for the faithful completion of the work and building, and may be applied under the direction of the architect in the liquidation of any damages under this contract. * * * Ten per cent. of this contract price shall be retained by the second party for thirty days, as required by law for the protection of labor. * * *

"If the contractors shall at any time refuse or neglect to furnish the proper material or workmen, or otherwise fail and refuse to comply with the plans and specifications, such failure being certified to by the architect, then second party shall be at liberty (after three days' written notice to the contractors) to provide the proper material and workmen, and deduct the cost from the money then due, or to become due, the contractors, or for sufficient reasons to terminate the employment of the contractors and take charge of the premises and all material thereon, and complete the building according to plans and specifications, charging the expense to the contractors."

The following may be culled as the most directly material facts established by the evidence: That the contractors did abandon the work on January 6, 1914. That on that date the school district, having then on hand an unexpended balance of the contract price of $5,245, took possession of the building and completed it on April 1st thereafter, instead of June 1st, making 180 days' delay, not 240, as was alleged. That the district had previously paid for the contractors on insurance only $102.40, instead of the amount alleged. And that, after the abandonment by the contractors, it then paid without architect's certificates direct to the holders of the indebtedness out of this $5,245 balance the following items: $530.79 for labor, and separate amounts of $1,764.51 and $1,200 for materials—all of which either had been previously furnished to the contractors for the building, or had been contracted for by them, and were finally used in its construction. In paying them the school district took an assignment from the holders of these $530.79 and $1,764.51 accounts, and paid a draft with bill of lading attached for the $1,200 item; also, the aggregate sum of $2,057.75 for repairs and necessary expenses in completing the building. The total contract price was $22,645, and the total amount paid the contractors before they abandoned the work, all of which was paid under architect's certificates, was $17,400, leaving above-stated balance of $5,245. That no money was paid out before the school district took possession without architect's certificates, and none after that time with them.

[1] While there was and is some dispute as to whether or not the $17,400 paid out by the school district prior to taking charge of the work exceeded the 80 per cent. of the labor and material, as called for in the con-

tract, depending to some extent upon how the contract should be construed in those respects, we do not regard that question as important, because the proof was undisputed that the district did not know it, if there was any excessive estimate by the architect, and acted honestly, fairly, and in good faith in making the payments: such payments, made under these circumstances, were conclusive, since there were neither allegations nor proof of fraud. Kilgore v. Baptist Society, 89 Tex. 465–469, 35 S. W. 145; McKenzie v. Barrett, 43 Tex. Civ. App. 451, 98 S. W. 229.

Through several assignments, appellant attacks the judgment claiming that the agreements to retain 20 per cent. and 10 per cent., respectively, of the contract price, to make payments only upon architect's certificates, to give three days' written notice to the contractors, were each and all breached by the school district in making the payments above detailed, and in taking possession of and completing the building, under the circumstances shown, and that such breach of the several different conditions of the contract operated to release it from all liability on the bond. It insists that each of these acts was a material alteration or deviation from the contract to secure the performance of the exact and precise terms of which alone it was liable as surety, that each was done without its consent, and that it was thereby absolved from any and all responsibility.

In urging this contention and applying it progressively to every act of the district subsequent to the abandonment of the work by the contractors, the bonding company argues that, in determining its rights and liability and in construing the contract, as between it and the school district, the doctrine of strictissimi juris should be applied in its favor. In support of these several positions and of their application to the case at bar, the following authorities are cited: Bullard v. Norton, 182 S. W. 668; Ryan v. Morton, 65 Tex. 258; McKnight v. Lang Mfg. Co., 155 S. W. 977; Bank v. Fidelity & Deposit Co., 145 Ala. 335, 40 South. 415, 5 L. R. A. (N. S.) 418, 117 Am. St. Rep. 45, 8 Ann. Cas. 241; Gen. Bonding & Casualty Ins. Co. v. Lumber Co., 176 S. W. 651; Morgan v. Salmon, 18 N. M. 72, 135 Pac. 553, 54 L. R. A. (N. S.) 407; Lonergan v. San Antonio Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 129 Am. St. Rep. 803; Ry. Co. v. Henry & Dilley, 65 Tex. 685; Williams v. Ry. Co., 57 Or. 251, 110 Pac. 490, 111 Pac. 17, Ann. Cas. 1913A, 177; Drhew v. Altoona, 121 Pa. 401, 15 Atl. 636; Blackburn v. Morel, 13 Ga. App. 516, 79 S. E. 492; Reissaus v. Whites, 128 Mo. App. 135, 106 S. W. 603; Lumber Co. v. Parker, 159 Ind. 571, 65 N. E. 747; Dunlap v. Eden, 15 Ind. App. 575, 44 N. E. 560; Young v. Young, 21 Ind. App. 509, 52 N. E. 776; Brennan v. Clark, 29 Neb. 385, 45 N. W. 472; McClellan v. McLemore, 70 S. W. 224; Valente v. Weinberg, 80 Conn.

134, 67 Atl. 369, 13 L. R. A. (N. S.) 448; Wilson v. Borden, 68 N. J. Law, 627, 54 Atl. 815; Sullivan v. Moffatt, 70 N. J. Law, 4, 56 Atl. 304; Elliott, Contracts, §§ 3681, 3682; 6 Cyc. 28, 74; Texas Fidelity & Bonding Co. v. Brown, 179 S. W. 1125; Fidelity & Deposit Co. of Md. v. Agnew, 152 Fed. 955, 82 C. C. A. 103; O'Neill v. Title Guaranty Co., 191 Fed. 570, 113 C. C. A. 211; Lucas Co. v. Roberts, 49 Iowa, 159; Gen. Bonding & Casualty Co. v. McCurdy, 183 S. W. 796; Murrell v. Scott, 51 Tex. 520; Durrell v. Farwell, 88 Tex. 98, 31 S. W. 185; Erath v. Allen & Son, 55 Mo. App. 107; Townsend v. Cleveland Fireproofing Co., 18 Ind. App. 568, 47 N. E. 707; McClellan v. McLemore, 70 S. W. 224.

But we are unable to agree with appellant that the principles applied in those cases rule the facts here developed.

In the first place, those cases cited on that particular phase of the case presuppose the termination of the contract by the owner, which similar result is assumed by appellant to have existed here, whereas we have found that the contractors themselves abandoned this work, thereby leaving the school district no alternative than to take charge of, complete it, and charge the expense to the contractors; that is, the termination of the contract in this manner gave rise to a new status in the relations between the parties.

[2] In the next place, we think that the intention of the parties themselves in making it is still the dominating consideration in the construction of a particular contract, and that this rule applies with equal force to a surety bond, such as is here involved, as to other forms of contract. This rule of construction, when applied to bonds, is succinctly stated in Ruling Case Law, vol. 4, "Bonds," c. 4, par. 17, p. 56:

"In construing an instrument under seal, although the courts generally adhere closely to the letter, yet the rule which prevails over all others is that a court may put itself in the place of the contracting parties; may consider, in view of all the facts and circumstances surrounding them at the time of the execution of the instrument, what they intended by the terms of their contract; and when their intention is manifest it must control in the interpretation of the instrument, regardless of inapt expressions, or mere technical rules of construction. Westervelt v. Mohrenstecher, 76 Fed. 118, 40 U. S. App. 221, 22 C. C. A. 93, 34 L. R. A. 477; Planters' & Merchants' Bank of Huntsville v. Hill, 1 Stew. (Ala.) 201, 18 Am. Dec. 39; First Nat. Bank of Baltimore v. Gerke, 68 Md. 449, 13 Atl. 358, 6 Am. St. Rep. 453, and note; 60 Am. St. Rep. 419, note."

[3] Testing the bond here by this rule, we find it unnecessary to determine the question raised as to whether or not the bonding company is liable as an insurer, because its very liberal terms, as we think, forbid the application to it of the rule of construction embodied in the maxim strictissimi juris. From the broadly binding character of the terms of this contract and bond, it seems manifest that the parties themselves in making them did not intend to narrow and restrict the

obligation the surety was taking. On the contrary, they went so far as to bind the bonding company to see to it that the contractors should "faithfully and fully carry out the design, true spirit, meaning and intent" of the contract "by and at the time mentioned." How could the design and true spirit of such a contract be faithfully and fully carried out without payment of the just debts for labor and material in good faith actually expended upon and used in the construction of the school building that furnished its subject-matter?

[4] Moreover, as is indicated above, we think the bonding company became, by the precise terms of its obligation, responsible to the school district for the consequences of the abandonment of the incompleted building; and that such termination of the connection of the contractors with the work made impracticable and inoperative the clauses requiring architect's certificates, three days' notice, and retention of 20 per cent. and 10 per cent., respectively, and left the school district in the position of a trustee toward all those who had furnished labor and material for use in the building, and as such, not only with the right. but also under the duty to pay them out of the funds thus unwillingly upon its part left in its hands. And this view is fortified by the further consideration that all those who had thus furnished labor and material. among whom was the intervener, were expressly made beneficiaries in and privies to the contract and bond, and hence were the legal recipients, in accordance with the terms of those instruments, of the amounts so paid them by the school district. Spann v. Cochran, 63 Tex. 240; Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672; Bank v. Ry. Co., 95 Tex. 176–184, 66 S. W. 203; Nelson Co. v. Stephenson, 168 S. W. 61; U. S. F. & G. Co. v. Thomas, 156 S. W. 573; Insurance Co. v. Waples Lumber Co., 176 S. W. 651; U. S. F. & G. Co. v. United States, 191 U. S. 416–423, 24 Sup. Ct. 142, 48 L. Ed. 242; Equitable Ins. Co. v. U. S., to use of McMillan, 234 U. S. 448, 34 Sup. Ct. 803, 58 L. Ed. 1394; U. S., to use of Foundry Co. v. National Surety Co., 92 Fed. 549, 34 C. C. A. 526; St. Louis v. Von Phul, 133 Mo. 561, 34 S. W. 843, 54 Am. St. Rep. 695; School District v. Livers, 147 Mo. 580, 49 S. W. 507; Lumber Co. v. De Longe, 157 Wis. 390, 147 N. W. 334, and citing other Wisconsin cases; Getchell Co. v. Peterson, 124 Iowa, 599, 100 N. W. 550–552; Baker v. Bryan, 64 Iowa, 561, 21 N. W. 83–85; Doll v. Crume, 41 Neb. 655, 59 N. W. 806; Kaufman v. Cooper, 46 Neb. 644, 65 N. W. 796; Graves v. Merrill, 67 Minn. 463, 70 N. W. 562; Johnston v. Charles, etc., Co., 123 Wis. 130, 101 N. W. 395, 68 L. R. A. 934, 107 Am. St. Rep. 995; Tweedale v. Tweedale, 116 Wis. 517, 93 N. W. 440, 61 L. R. A. 509, 96 Am. St. Rep. 1003; Fanning v. Murphy, 126 Wis.

538, 105 N. W. 1056, 4 L. R. A. (N. S) 666; Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. (N. S.) 793, and note; Knight v. Jillson Co., 172 Ind. 97, 87 N. E. 976, 27 L. R. A. (N. S.) 573, and note.

These cases seem to firmly establish the principle that a contract between two persons will inure to the benefit of a third in privity with it, and that he is fully protected thereby. It follows from these views that the various acts done and payments made by the school district subsequent to its enforced taking over of the abandoned and incompleted work did not, in our opinion, constitute material alterations and deviations from the precise terms of the contract and thereby release the bonding company, but were the legitimate consequences reasonably in contemplation of all parties in making it, and were not out of harmony with its properly construed terms.

[5] Nor do we think there was error in allowing the school district to recover the agreed upon damages for the proven time of the delay in completing the work. Here, again, the terms of the contract constitute the best criterion of what was meant in that respect. Its provision was:

"Should the contractors fail to finish the work within the agreed time, they are to allow or pay the school district, by way of liquidated damages, $10.00 per day for every day thereafter the building should remain incomplete, and they are to receive $10.00 per day for every day the building is completed before the agreed time."

The undisputed proof showed that the entire delay recovered for resulted solely from the fault of the contractors before their abandonment, and that no delay occurred after the school district took charge. It cannot be said that the allowance of this recovery was not in consonance with even the precise terms of the contract. It will be seen that the obligation to pay the $10 per day was absolute and unconditional, contingent alone upon failure to meet the time limit, and compensated for upon the contractor's side by providing a bonus in like amount to them, in case of completion before the time fixed.

From the conclusions reached, it follows that all of appellant's assignments must be overruled, and the judgment in all things affirmed, and it is so ordered.

Affirmed.