George W. THORNTON, d/b/a L & M Electric Company, et al., Appellants,

v.

ARLINGTON INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 16064.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 29, 1960.

Rehearing Denied March 4, 1960.

Earl Luna, Dallas, for appellants.

Cantey, Hanger, Johnson, Scarborough & Gooch, and Carlisle Cravens, Fort Worth, for appellee.

BOYD, Justice.

George W. Thornton, doing business as L & M Electric Company, and the Aetna Casualty and Surety Company appeal from a joint and several judgment in favor of Arlington Independent School District.

The School District entered into a contract with Thornton for certain electrical work on its buildings, the total amount of the contract being $26,085.79, and Aetna was the surety on Thornton's performance bond. The School District alleged that Thornton failed to supply properly skilled workmen and failed to properly prosecute the electrical work in such manner that the work of other contractors could be done without delay, and that upon the approval and certification of the architect the School District terminated Thornton's contract after due notice, and made arrangements with a third party to do the necessary interim work while advertisement for bids could be had and a new contract made for the electrical work; that the interim work amounted to $1,704.09 and the contract for the completion of the electrical work involved an expenditure of $29,546. The School District prayed for judgment in the amount of $5,474.15. The jury found that Thornton failed properly to prosecute the electrical work in such manner that the work of the other contractors could be accomplished without delay. Judgment was rendered for $5,422.50.

Appellants pleaded a general denial and further alleged that Thornton at all times was ready, willing and able to carry out the terms of the contract, and had skilled workmen on the job at all times until he was prevented, through no fault of his own, from performing the work by the refusal of the City of Arlington to grant a temporary permit to carry out the work under

the terms of the contract; that the City Police of the City of Arlington, acting under the direction of the Mayor, the Corporation Court, and the Electrical Examiner of the City, prevented him from carrying out the terms of the contract; that the action of the Police rendered it impossible for Thornton to complete the contract. Appellants filed a cross-action asking for reimbursement for $2,819.33 for labor and materials expended on the job, $260 for premium on its performance bond, $10 for premium on a bond with the City of Arlington, and $3,000 for loss of profits.

Appellants filed a motion for instructed verdict, which was overruled, and that action is assigned as error. Appellants also contend that the evidence was insufficient to support the judgment.

Article 38 of the General Conditions of the Specifications of the Contract, provides as follows: "If the Contractor should neglect to prosecute the work properly or fail to perform any provision of this Contract, the Owner, after three (3) days' written notice to the Contractor may, without prejudice to any other remedy that he may have, make good such deficiencies and may deduct the cost thereof from the payment then or thereafter due to the Contractor; provided, however, that the Architect shall approve both such action and the amount charged to the Contractor."

Article 39 thereof provides, in part, as follows: "If the Contractor * * * persistently or repeatedly refuse or fail to supply enough properly skilled workmen * * * or persistently disregard laws, ordinances * * * or otherwise be guilty of a substantial violation of any provision of the Contract, then the Owner, upon the certificate of the Architect that sufficient cause exists to justify such action, may, without prejudice to any other right of remedy and after giving the Contractor seven (7) days written notice, terminate the employment of the Contractor and take possession of the premises and of all material, tools and appliances thereon and finish the work

by whatever method he may deem expedient."

Article 8 thereof is, in part, as follows: "The Contractor must, at his own cost, obtain all necessary permits * * * and comply with all State and Municipal building and sanitary laws, ordinances and regulations relating to building * * *."

Article 28 thereof provides that the Contractor shall obtain all licenses and to pay all fees and charges arising out of and in connection with the work.

Article 41 thereof provides that the School District might let other contracts in connection with the work; and that Thornton should properly connect and coordinate his work with the other contractors.

The contract was forwarded to Thornton on December 20, 1956, and was returned executed on January 10, 1957. On January 12, 1957, the architect sent Thornton a "letter of authority" to proceed with the work. Thornton did some work about the middle of January. The architect testified without contradiction that no other work was ever done by Thornton, and that soon after this work was done, he called Thornton by telephone, asking him to "get men on the job," and on February 1, 1957, he wrote Thornton that electricians would be needed between then and the middle of February, and asked that Thornton advise him immediately what his intentions were concerning the furnishing of qualified electricians to do the work when needed. He got no reply to that letter. On February 8 the architect wrote Thornton that it was his understanding that Thornton had failed to secure permits from the City of Arlington for his men to do the work, and that since the work was urgently needed to be done to avoid delay, the School District would employ an electrician to do the immediate work, as authorized by Article 38 of the General Conditions of the Specifications. On February 12, an arrangement was made with Butcher Electrical Service to do that work. Thornton was not heard from, nor did he

send any men to the job. The architect further testified that Thornton's men were stopped by the City of Arlington because they were not licensed to do the work.

On February 12, 1957, the President of the School District Board wrote Thornton that the architect had "indicated to us in writing that sufficient cause exists to justify termination" of the contract because of Thornton's failure to supply enough properly skilled workmen and his failure to prosecute his work in such manner that the other work could go on without delay, and that after repeated requests he had failed to supply any workmen whatsoever, which had delayed the work of the other contracts. On February 28, 1957, the School District entered into a contract with Metcalfe Electric Company to complete the electrical work.

Appellants say that there was no "certificate" by the architect that sufficient cause existed to justify termination of the contract, since the architect, in his letter to the School District Board, only recommended that the Board notify Thornton that his contract would be terminated under provisions of Article 39 of the General Conditions. To show that the architect's letter did not amount to a "certification," appellants cite Valente v. Weinberg, 80 Conn. 134, 67 A. 369, 13 L.R.A.,N.S., 448; Oden Const. Co. v. Helton, 218 Miss. 41, 65 So.2d 442; White v. Mitchell, 30 Ind.App. 342, 65 N.E. 1061; Wilson v. Borden, 68 N.J.L. 627, 54 A. 815; Benson v. Miller, 56 Minn. 410, 57 N.W. 943, and other cases.

In our disposition of the appeal we do not determine whether the architect's letter was a "certification" that sufficient cause existed to terminate the contract. Neither do we determine whether the President of the School District Board was authorized by the Board to notify Thornton that his contract would be terminated.

It is our opinion that the judgment must be affirmed on the answer of appellants and the undisputed evidence that Thornton did not and could not continue the work because he did not comply with the requirements of the City of Arlington as to licensing electricians. Thornton had agreed to obtain all necessary permits and to comply with all building laws, ordinances, and regulations. We think his failure to do so cannot relieve him from his contractual obligations. "Ordinarily, when one contracts to render a performance for which a government license or permit is required, it is his duty to get the license or permit so that he can perform. The risk of inability to obtain it is on him; and its refusal by the government is no defense in a suit for breach of his contract." Corbin on Contracts, vol. 6, p. 353, sec. 1347. See, also, Williston on Contracts, vol. 6, p. 5411, sec. 1932; Restatement of the Law, Contracts, p. 845, sec. 455; 12 Am. Jur., p. 954, sec. 379; Kingsville Cotton Oil Co. v. Dallas Waste Mills, Tex.Civ. App., 210 S.W. 832, error refused; Levy Plumbing Co. v. Standard Sanitary Mfg. Co., Tex.Civ.App., 68 S.W.2d 273, error refused.

We think the rule announced in Texas Fidelity & Bonding Co. v. Rosenberg Independent School Dist., Tex.Civ.App., 195 S.W. 298, and Thomas v. Basden & Carrell, Tex.Civ.App., 22 S.W.2d 959, is applicable to the facts of this case.

In the Texas Fidelity & Bonding Company case the contractor could not continue because of lack of funds. The contract provided that before the School District could terminate it, there must be notice and a certificate of the architect of the contractor's failure properly to perform. In rejecting the contention that the district's ignoring these provisions constituted a defense to its suit on account of nonperformance, the court said [195 S.W. 300]:

"In the first place, those cases cited on that particular phase of the case presuppose the termination of the contract by the owner, which similar result is assumed by appellant to have existed here, whereas

we have found that the contractors themselves abandoned this work, thereby leaving the school district no alternative than to take charge of, complete it, and charge the expense to the contractors; that is, the termination of the contract in this manner gave rise to a new status in the relations between the parties. * * * Moreover, as is indicated above, we think the bonding company became, by the precise terms of its obligation, responsible to the school district for the consequences of the abandonment of the incompleted building; and that such termination of the connection of the contractors with the work made impracticable and inoperative the clauses requiring architect's certificates, three days' notice and, retention of 20 per cent. and 10 per cent., respectively, and left the school district in the position of a trustee toward all those who had furnished labor and material for use in the building, and as such, not only with the right, but also under the duty to pay them out of the funds thus unwillingly upon its part left in its hands. * * *"

In the Thomas case the court was considering a contract for garbage disposal, which provided for 90 days' notice of intention to terminate. The court, after reciting the findings that the contractor did not supply cans sufficient to handle the garbage, that the cans which were furnished were not suitable for the purpose, and that he did not remove the garbage in the manner and at the time it was reasonably necessary, made this observation:

"These latter findings show that appellant first substantially breached the contract between himself and the Baker Company by failing to properly discharge the obligations resting upon him. Under these circumstances he cannot complain of the Baker Company's subsequent failure to give him 90 days' notice of its purpose to terminate the contract." ·

Another contention of appellants is that the contract was terminated by the School District because it claimed that Thornton failed to prosecute the work in the auditorium, when, according to the work sequence as set out in the contract, the repairs in the auditorium were not to be commenced until the summer recess. While the architect did testify that there was some electrical work needed in the auditorium, and he complained of Thornton's failure to do it, he also testified without dispute that electrical work was needed in the cafeteria building before February 6, 1957, and that Thornton's failure to do it was delaying the other contractors.

The judgment is affirmed.